FIFER, Plaintiff in error, vs. THE STATE, Defendant in error.

December 12, 1925—January 12, 1926.

Robbery: Armed with dangerous weapon: Evidence: Conviction . based on testimony of participant: Who are principals: Trial: Verdict where one of several defendants pleads guilty.

1. The evidence in this case is held sufficient to sustain a conviction for assault and robbery being armed with a dangerous weapon, as against three defendants, although such conviction is based largely upon the testimony of another defendant who waited in an automobile, acted as lookout while his companions held up a storekeeper, and who, prior to the trial, entered a plea of guilty.  p. 55.

2. Where, in a holdup staged by five men, each performed his allotted part of the plan, all were guilty as principals, under sec. 4613, Stats.  p. 55.

3. Where the information charged the four defendants jointly and one pleaded guilty, a verdict of the jury as to him became unnecessary, and it was proper for the court to instruct the jury not to return a verdict in relation to him.  p. 55.

ERROR to review a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge.  Affirmed.

The writ of error was issued to review the judgment and sentence of the court and an order denying a motion of plaintiff in error to set aside the judgment and sentence and to grant a new trial.

*Edward J. Burke* of Milwaukee, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, Eugene Wengert,* district attorney of Milwaukee county, *George A. Burns,* special assistant district attorney, and *C. Stanley Perry,* assistant district attorney, and oral argument by *Mr. Perry.*

DOERFLER, J. *Harry Fifer,* the plaintiff in error, Clarence Miller, and Anton Czerwinski were found guilty by the verdict of a jury of the crime of assault and robbery being armed with a dangerous weapon. John Tuchalski, a youth of about sixteen years of age, was informed against together with the persons above mentioned, and entered a plea of guilty.

The conviction was largely based upon the testimony of Tuchalski, and it appears therefrom that on the day of the commission of the crime he had visited a pool hall located on the corner of First avenue and Hayes street in the city of Milwaukee, and that he was there approached by one Pointek, who pointed a revolver at him, and by said Miller, who had a blackjack secreted in the sleeve of his overcoat, and was coerced to leave the hall and enter a waiting automobile driven by Czerwinski. *Fifer* was seated in the automobile when Tuchalski arrived. The automobile was driven first north on First avenue to Lincoln avenue; thence west on Lincoln avenue to Eighth avenue; thence south to the middle of the block between Arthur avenue and Harrison street, and was then turned back on Eighth avenue to Arthur avenue, where it turned the corner towards the east, and then stopped just east of the southeast corner of Arthur and Eighth avenues. Pointek and Miller left the automobile and entered the store of one Schneider, the com-

plaining witness, and at the point of a revolver took from him $35 in money and a watch. During the robbery of the store Czerwinski kept the engine of the machine running, and was in readiness to receive the two companions who had entered the store; and while the actual robbery took place, *Fifer* was stationed at the street intersection as a lookout. Tuchalski remained in the automobile with Czerwinski, and claimed that he did not participate in the robbery. Here it must also be stated that, while proceeding to the scene of the robbery, the entire plan was devised and each party participating was assigned his duty. The car was then driven east on Arthur avenue to Seventh avenue; south on Seventh avenue to Cleveland street; east on Cleveland street to First avenue; thence south on First avenue to Oklahoma avenue; and thence west to Fifteenth avenue, where it was brought to a stop and the proceeds of the robbery distributed among the participants, Tuchalski claiming that he neither was offered nor received any of the proceeds. Thereafter the automobile was turned towards the city, in the locality of Tuchalski's home, where he alighted and proceeded homeward. Upon alighting from the machine Tuchalski saw that the automobile in question was a Chevrolet touring car.

Immediately after the robbery a report of the same was made to a police officer who was in the immediate vicinity, and he testified that just before receiving the report he saw a Chevrolet car passing east on Arthur avenue between Seventh and Eighth avenues.

The complaining witness testified that the holdup took place between 8:45 and 9 o'clock in the evening, and that Pointek, who was in court and testified as a witness on the trial, looked like the man who had the revolver and who participated in the holdup, but he was unable to definitely identify him.

About one week after this affair Tuchalski was taken into custody and lodged in the police station, at which time

he denied having any knowledge of the robbery, but about three hours later, being told that the police department had received knowledge from some one that he was implicated, he volunteered a complete statement of what had transpired.

All of the defendants charged, excepting Tuchalski, relied for a defense upon an *alibi*. To prove his *alibi Fifer* testified that on the night in question he accompanied his brother to the office of Dr. Dempsey, a dentist, and that he returned to his home at about 8:30 o'clock that evening, where he remained during the night. Dr. Dempsey testified that *Fifer* came to his office between 7 and 7:20 o'clock in the evening, and that he left between 7:45 and 8 o'clock. This testimony of the doctor was corroborated by a patient who was present in his office. The parents of *Fifer* testified that he remained at home after returning from the dental office, and a sister and a brother-in-law, who resided on the upper floor of the building in which *Fifer* lived, testified that they saw *Fifer* at his home until after 9 o'clock of the evening of the robbery. The *alibi* of Czerwinski was completely shattered by an official record which is convincing beyond controversy.

That *Fifer* was in the dental office somewhere between 7 and 8 o'clock in the evening has been fairly established by the testimony of disinterested witnesses. There is, however, a grave doubt whether he ever returned to his home, after leaving the dental office, until after the robbery; but assuming that he did so return to his home, it was somewhere between 8 and 8:30 o'clock in the evening. According to the testimony of Tuchalski, when he entered the automobile *Fifer* was seated therein. Therefore it is reasonable to assume that *Fifer* was picked up by Czerwinski and the rest of the gang and driven to the pool hall, and thence to the place of the robbery, all of which, with the aid of a fast-moving machine, would consume very little time, and this would readily explain his presence when the holdup took place, between 8:45 and 9 o'clock p. m.

Whether the parents of *Fifer* and the other relatives testified to the truth as to his whereabouts on the evening of the robbery, in view of the testimony of Tuchalski, presented an issue which was clearly one for the jury to determine.

We have gone over the record carefully, consisting of about 500 pages of typewritten matter. Tuchalski is a young lad about sixteen years of age, with not even the rudiments of an education. Besides, he was far from being naturally keen mentally, and the evidence shows that his companions used him as the butt of many practical jokes. While on the witness stand he was subjected to a severe cross-examination by three able counsel, and the extent of such examination is made manifest by about 200 pages of typewritten testimony. During all this grilling he adhered substantially to all of the salient points brought out in his direct examination, and it can be truthfully said that no one, upon a perusal of the record, can fairly say that his testimony appears untruthful or unworthy of credit.

While the complaining witness could not definitely identify the defendants, he was able to testify and did testify that Pointek appeared to him like one of those who participated in the robbery. The testimony of Tuchalski that the car used was a Chevrolet was corroborated by the testimony of the police officer. Tuchalski personally was acquainted with his codefendants, and had known them for some time prior to the commission of the offense. His voluntary statement made to the police department, after having been confined for three hours in a cell, is also very persuasive and convincing, and the statement then made harmonizes in all essential details with his testimony on the trial.

Counsel for *Fifer* argues in his brief that the testimony of Tuchalski where he claims that he was coerced by Pointek with a revolver and by Miller with a blackjack is utterly absurd and incredible. It is argued that a number of other persons at the time were in the pool hall, and that it

does not appear from the evidence that any of the inmates of the pool hall heard the threat. To our mind the acts of Pointek and Miller are neither absurd nor incredible, when we consider the desperate characters of these individuals, who had determined to commit as despicable a crime as that of a holdup. Having concocted the general scheme of the holdup, and each party particularly having assisted therein in performing his allotted part of the plot, they are all guilty under the law as principals. Sec. 4613, Stats. 1923; *In re Carlson,* 176 Wis. 538, 549, 186 N. W. 722; *Connaughty v. State,* 1 Wis. 159.

As to the weight to be given to Tuchalski's testimony and to its credibility, the court fully and properly instructed the jury. That the evidence was sufficient to sustain the conviction and the judgment and sentence, see *Black v. State,* 59 Wis. 471, 472, 18 N. W. 457; *Porath v. State,* 90 Wis. 527, 536, 63 N. W. 1061.

During the trial of the action, when it appeared that Tuchalski's presence during the robbery was the result of coercion, his counsel applied to the court for leave to change the plea of "guilty" to "not guilty." This application was denied by the court for the time being. Tuchalski having pleaded guilty, the jury was instructed not to return a verdict in relation to him. Such instruction *Fifer's* counsel claims constituted prejudicial error. The information charged the defendants, including Tuchalski, jointly with the commission of the offense. All of the defendants excepting Tuchalski pleaded not guilty, while Tuchalski entered a plea of guilty. In view of Tuchalski's plea a verdict of the jury became unnecessary, and in order to acquaint the jury of such fact the instruction complained of was not only necessary but proper. It was merely a recital of what the record disclosed, and we cannot see upon what theory such instruction constitutes error, to say nothing of prejudicial error.

Nothing new was presented to the court in *Fifer's* ap-.

plication for a new trial, and such application was therefore properly denied.

*By the Court.*—The judgment, sentence, and order of the lower court are affirmed.

---

ᴇᴀsᴛᴡᴀʏ, Plaintiff in error, vs. Tʜᴇ Sᴛᴀᴛᴇ, Defendant in error.

*December 12, 1925—January 12, 1926.*

*Criminal law: Former jeopardy: Larceny of automobile: Operating car on public highway without owner's consent: Not lesser degree of larceny: When one offense is included in other.*

1. A prosecution for the larceny of an automobile is not a bar to a subsequent prosecution, based on the same act or transaction, for taking, using, and operating the same automobile on a public highway without the owner's consent, in violation of sec. 343.18, Stats. 1925, such offense not being a lesser degree of larceny but a distinct statutory offense.    p. 58.

3. Under an information charging that defendant "did take, steal, and drive away" another's automobile, defendant could not have been convicted of operating a car on a public highway without the owner's consent, in violation of sec. 343.18, Stats. 1925, without an amendment of the information, under sec. 4703, Stats. 1923, by inserting such allegation, and hence defendant was not put in jeopardy as to the latter offense by a prosecution under such information.    p. 59.

Eʀʀᴏʀ to review a judgment of the municipal court of Milwaukee county: Gᴇᴏʀɢᴇ Sʜᴀᴜɢʜɴᴇssʏ, Judge.    *Affirmed.*

For the plaintiff in error the cause was submitted on the brief of *Arthur H. Bartelt* of Milwaukee.