UNDERWOOD and others, Plaintiffs and Respondents, v. STRASSER and others, Defendants and Appellants: AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Third-Party Defendant and Respondent.

*No. 213. Argued October 8, 1970.—Decided November 3, 1970.*
(Also reported in 180 N. W. 2d 631.)

For the appellants there were briefs by *Prosser, Wiedabach, Koppa, Lane & Quale* of Milwaukee, and oral argument by *Howard H. Koppa.*

For the respondents there was a brief by *Murn, Ferr & Gumina* of West Allis, and oral argument by *Paul J. Ferr.*

ROBERT W. HANSEN, J. The Wisconsin statute authorizes and limits the questioning of witnesses as to prior criminal convictions in these words:

"A person who has been convicted of a criminal offense is, notwithstanding, a competent witness, but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining him is not concluded by his answer." [1]

This statutory provision applies to civil actions, as well as to criminal cases. No distinction between the two categories of cases is made in the statute. The section is in ch. 885 under Title XLIII, "Provisions Common to Actions and Proceedings in All Courts." It was on an appeal in a civil action that this court upheld the statute against attack, specifically rejecting the suggestion, repeated on this appeal, that Rule 106 of the Model Rules of Evidence be followed in place of the statutorily stated rule. [2]

It is then the law in this state, statutorily established, that on an issue of credibility, a witness who takes the

[1] Sec. 885.19, Stats.

[2] ". . . the Wisconsin rule is set forth by a legislative enactment. Plaintiff's argument for a change should be submitted as a proposed rule change by this court or addressed to the legislature." *Rausch v. Buisse* (1966), 33 Wis. 2d 154, 168, 146 N. W. 2d 801.

stand may be questioned as to prior convictions of criminal offenses. Two questions may be asked: (1) Have you ever been convicted of a criminal offense?; and (2) How many times?[3] Given responsive and accurate responses to these two questions, no further questions may be asked.[4]

It is only on the issue of credibility that the two questions as to fact and number of convictions may be asked. What makes this case unusual, almost puzzlingly so, is that the two questions were both asked before any conflict in the testimony of the witness or with the testimony of other witnesses put credibility at issue.

Here, on direct examination, the plaintiff was asked by his own attorney, "Mr. Valona, were you ever convicted of a crime?" The plaintiff answered, "Yes." No objection was made to the question being asked. The second question as to the number of convictions was asked on cross-examination by defense counsel. In fact, it was the initial question asked on cross-examination. Objection was made, sustained and, following a conference of court and counsel in chambers, a mistrial was ordered.

A case could be made that both questions were prematurely asked, no issue as to credibility having arisen when each in turn was asked. So the question here must be whether a plaintiff's attorney, as a matter of trial strategy, can ask the first of the two statutorily permitted inquiries and thereafter bar the asking of the

---

[3] "The defendant contends that the only purpose of asking 'how many convictions' was to show that the defendant had a propensity for committing crimes. This is not the purpose of the question. Under sec. 885.19, Stats., a person who commits a crime is considered to be less credible than the ordinary witness. A person who has been convicted 11 times previously (as was the defendant here) is considerably less credible than a person who has only been convicted once." *Liphford v. State* (1969), 43 Wis. 2d 367, 371, 168 N. W. 2d 549.

[4] *State v. Adams* (1950), 257 Wis. 433, 435, 43 N. W. 2d 446.

second question, at least unless or until an issue as to credibility has arisen. While the statute refers only to inquiries as to prior conviction being proved ". . . either by the record or by . . . cross-examination," if there were no objection, it is clear that plaintiff could have asked both questions, one as to the fact of prior conviction, and the other as to the number of such convictions. That, given truthful answers, would have been the end of the road, and, viewed as a matter of trial tactics, introducing such admissions as to prior convictions on direct examination, rather than on cross-examination, might well appeal as having less jury impact than having it later become a proper question on cross-examination. However, this plaintiff's counsel did not do. He asked the first question only, and then objected to the second. He opened the door by asking the first question, and objected to it remaining ajar for the asking of the second. We would hold that counsel, having asked his client if he had ever been convicted of a crime, lost the right to object to opposing counsel subsequently asking on cross-examination how many times the client had been convicted. To hold otherwise, would clearly leave with the jury the impression that the witness had been convicted only once of a single offense. If the jurors were entitled to know the fact of prior conviction, they were also entitled to know the number of such prior convictions.

Not discussed in the briefs is the significance of this court's adoption of Rule 303 of the Model Code of Evidence [5] in a 1967 decision.[6] This decision gives to trial

[5] "Rule 303. DISCRETION OF JUDGE TO EXCLUDE ADMISSIBLE EVIDENCE.

"(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will

"(a) necessitate undue consumption of time, or

"(b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or

courts discretion to exclude even admissible evidence when such admission would "create substantial danger of undue prejudice." However, it is difficult to see how the hitchhiker question as to number of convictions would qualify as creating such danger in a situation where the objector already had placed into the record an answer to the first question as to the witness having been convicted "of a crime." Additionally, ". . . Rule 303 is implicit in its requirement that the judge 'find' that the probative value of otherwise admissible evidence is outweighed by risks that would result if the evidence is not excluded." [7] There must be some evidence that Rule 303 discretion was in fact exercised. Here the trial court instead clearly stated its belief that the right to inquire into the number of prior convictions was limited to criminal cases, a conclusion we have negatived.

Seven days after the trial judge granted the mistrial, the trial judge called respective counsel into chambers and further explained his reasons for granting a mistrial, then stating that the demeanor of defendant's counsel and his tone of voice was "one of several reasons" why a mistrial was declared. Demeanor and tone of voice do not survive the courtroom scene, and findings of a trial court in such regard are not easy to review, much less set aside. But where no comments as to either demeanor or tone of voice were made at the time of declaring the mistrial, and where the question as to frequency of prior convictions was the first and only question that defense counsel got to ask, this added reason for declaring a mistrial appears to have been a collateral, rather than a principal, basis for the mistrial being ordered and costs awarded. At the time of declaring the mistrial, it was

"(c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered."

[6] *Whitty v. State* (1967), 34 Wis. 2d 278, 149 N. W. 2d 557.

[7] *State v. Hutnik* (1968), 39 Wis. 2d 754, 764, 159 N. W. 2d 733.

only the single question asked, not the manner of asking it, that the trial court referred to in terming it "prejudicial and reversible error." The matter of demeanor of defendant's attorney appears to be a caboose added to the mistrial train, rather than the locomotive that started it on its way.

The order directing the defendants to pay costs in the amount of $490.90 clearly is an integral part of the court order declaring a mistrial. In fact, it is no more than attaching terms and conditions to such order declaring a mistrial. However, the notice of appeal here refers only to an appeal, ". . . from the Order Awarding Costs to Plaintiffs Upon Mistrial." While arguments on both sides went beyond the narrow confines of the notice of appeal, there is sound reason to stay within the limit suggested. As the nursery rhyme said of putting Humpty-Dumpty back on the wall, there are evident difficulties in resuming a trial long after it has been terminated at midpoint or earlier and the jury has been discharged and sent home. So here the order declaring a mistrial will be permitted to stand, and the condition attached awarding costs against defendants will be stricken.

*By the Court.*—Order modified and, as modified, affirmed.