MOORE, Plaintiff in error, v. STATE, Defendant in error.

*No. 76–139–CR. Argued March 7, 1978.—Decided May 2, 1978.*
(Also reported in 265 N. W. 2d 540.)

For the plaintiff in error the cause was argued by *Jack E. Schairer,* assistant state public defender, with whom on the brief was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Pamela Magee-Heilprin,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

CONNOR T. HANSEN, J. For the purposes of this appeal, it is unnecessary to recount the testimony adduced at trial in detail. The victim, her husband who was not home at the time of the incident, and their small child, occupied an apartment in a building in which the defendant and his family also occupied an apartment. The victim had seen the defendant in the building on prior occasions.

The victim identified the defendant and testified he gained entry to the apartment under the representation that he was to fix the ceiling tile. He grabbed her by the neck, threatened her with a knife, cut and ripped her sweatshirt, dragged her to the living room couch, raped her and then cut the telephone cord.

The defendant presented the defense of alibi supported by the testimony of Gary Hendricks. Hendricks testified that he and Gary Moore went barhopping on the night of the rape. Hendricks testified that the next morning he heard the defendant's stepbrother, Bradley Beaudry,

tell the defendant that he, Beaudry, had "ripped off the broad downstairs" and was going to Canada, and that the defendant then told Hendricks to leave because the police would be coming. Upon cross-examination, Hendricks testified that he and the defendant had been co-defendants in two previous convictions after escaping together from Wisconsin State Reformatory and stealing a car.

The jury returned a verdict of guilty. The defendant was committed to the Department of Health & Social Services for a sixty-day presentence examination pursuant to sec. 975.01, Stats. The presentence report returned to the trial court included a psychiatrist's report stating that the defendant had admitted committing the rape. The report did not recommend specialized treatment of the defendant, and he was sentenced as provided by statute.

One of the issues raised on this review arises from the fact that prior to trial the defendant, by letter to the trial court, requested that he be permitted to take part in the examination and cross-examination of witnesses. This letter stated:

"Dear Sir: I wish to inform the Court that it is my wish and my intent to participate in the examination and cross examination of all witnesses for and against me in the trial I am confronted with on March 26th. I feel my best interests as well as my Constitutional guarantees will be best safeguarded by the Court recognizing me, the Defendant, as co-counsel in which capacity I shall be able to demand the nature and cause of the accusations against me and to meet the witnesses face to face, as well as enjoy the Constitutional right of assisting in my own defense as is ascertained by the Constitution of the United States and outlined in due process procedures.

"I also wish to inform the Court that the defense will, in all probability, expect to use voir dire examination and challenges for cause in the examination of the prospective jurors to determine competency and qualifications of jury members."

A pretrial hearing was held on this request. The defendant's letter was entered into the record, and the defendant's request to participate as co-counsel in his defense was denied, under the trial court's authority to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence. Sec. 906.11, Stats.

The issues raised on this review are as follows:

1. Did the trial court err in permitting cross-examination of witness Gary Hendricks regarding prior offenses involving the defendant?

2. Is a criminal defendant entitled, under either the federal constitution or the constitution of Wisconsin, to have his defense presented by both his counsel and himself?

3. Did use of the sex deviate report deprive the defendant of equal protection or of due process?

4. Did the trial court abuse its discretion in sentencing the defendant?

5. Should the defendant's sentence be modified in the interest of justice?

## EVIDENCE OF PRIOR CRIMES.

On direct examination, Hendricks, the alibi witness, was asked how many times he had been convicted, and he testified that he had been convicted four times. On cross-examination by the state, the witness testified he and the defendant were schoolboy chums. The prosecutor then asked Hendricks whether or not he wanted to tell the jury whether he and the defendant were co-defendants in two of the convictions, and the witness responded "Yes, certainly." Defense counsel objected on the ground that the question was both immaterial and prejudicial. The trial court, upon inquiry as to the purpose of the question, was advised that it was to show "motivation and credibility" of the witness, whereupon

the trial court permitted the witness to answer, and he responded, "We escaped together, in 1969, from the Wisconsin State Reformatory and stole a car."

The defendant first contends that the trial court failed to weigh the probative value of the evidence against its prejudicial effect, as required by statute and the decisions of this court. The established rule that evidence of prior crimes may not be introduced to show a witness' bad character or criminal propensity is subject to certain exceptions. *Whitty v. State,* 34 Wis.2d 278, 149 N.W.2d 557 (1967), *cert. denied,* 390 U.S. 959. When one of these exceptions is asserted, the trial judge must exercise his discretion to determine whether any prejudicial effect of the evidence outweighs its probative value. *Kwosek v. State,* 60 Wis.2d 276, 282, 208 N.W.2d 308 (1973). This rule is codified in sec. 906.09(2) and (3), Stats. which provide:

"*(2)* EXCLUSION. Evidence of a conviction of a crime may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.
"*(3)* ADMISSIBILITY OF CONVICTION. No question inquiring with respect to conviction of a crime, nor introduction of evidence with respect thereto shall be permitted until the judge determines pursuant to s. 901.-04 whether the evidence should be excluded."

Here the presiding judge considered the objection that the questioning was prejudicial and immaterial, and he inquired as to the purpose of the questioning. Advised that the question was for the limited purpose of showing the witness' motivation and impeaching his credibility, the court allowed the witness to answer, on the understanding that there would be no further questions regarding prior offenses. On this record it is apparent that the trial court did, in fact, exercise discretion in permitting the question and admitting the answer.

However, the prosecutor's cross-examination of Hendricks regarding prior offenses was contrary to the rule established by the decisions of this court. When a witness has truthfully testified as to his prior convictions on direct examination, nothing further may be said about them on cross-examination. There is no need to allow the facts stated on direct examination to be repeated on cross-examination, and this court has recognized the potential for prejudice inherent in evidence of prior crimes. *Nicholas v. State,* 49 Wis.2d 683, 183 N.W. 2d 11 (1971) ; *accord, Underwood v. Strasser,* 48 Wis.2d 568, 180 N.W.2d 631 (1970).

In the instant case Hendricks testified on direct examination that he had been convicted of a crime on four occasions. There is no suggestion that this answer was inaccurate or incomplete. It follows, therefore, that cross-examination of Hendricks with regard to his prior offenses was improper.

The state argues that the testimony elicited should be admitted for its probative value with regard to the credibility of the defendant. The defendant's credibility was put in issue when he asserted an alibi defense. *State v. Midell,* 39 Wis.2d 733, 159 N.W.2d 614 (1968). However, when asked the purpose of the inquiry, the prosecutor stated only that it was to show the motivation and credibility of Hendricks.

In addition, the procedure followed in this case was not the approved manner of eliciting evidence of prior convictions for the purpose of impeaching the defendant's testimony. *Staples v. State,* 74 Wis.2d 13, 24, 245 N.W. 2d 679 (1976). Although the defendant himself might properly have been questioned about his prior convic-

tions, the state failed to do so during his testimony. Moreover, even if the questions had been directed to the defendant, himself, he could not have been asked about the circumstances of prior crimes or the fact that he and Hendricks had been co-defendants.

However, the fact that the trial court permitted an improper question concerning the prior criminal conduct of the witness, does not mean the judgment should be reversed *ipso facto*. Under sec. 817.37, Stats.[1] a judgment will not be reversed or a new trial granted unless it appears that the error has affected the substantial rights of the party seeking relief. The effect of erroneously admitted evidence must be realistically evaluated in the context of the case, and a new trial will not be granted unless the error was so prejudicial that a different result might have been reached if the evidence had not been admitted. *See, Staples v. State, supra,* at 24.

From an examination of the record in the present case, it is clear that the substantial rights of the defendant were not affected by the improper inquiry regarding prior crimes of Hendricks and the defendant. The evidence of the defendant's guilt affords no room for reasonable doubt. The victim identified the defendant from photographs shown to her by the police and testified to the details of the crime; her testimony was corroborated in large part by the defendant's stepbrother, Beaudry; her testimony was also corroborated by her husband, who had been speaking with her on the telephone when the defendant gained entry on the pretense of repairing some ceiling tile; and by physical evidence in the form of a cut telephone wire, a moist sticky stain on the couch; and the victim's torn sweatshirt in the wastebasket. This record amply demonstrates that the substantial rights of the defendant were not affected and that no reason-

[1] Formerly sec. 274.37, Stats. 1973.

able jury could fairly have come to any other conclusion. *Staples v. State, supra,* at 24.

In addition, the defendant failed to move for a mistrial based on the admission of Hendricks' testimony regarding the prior criminal offenses, and did not raise the allegation of error in motions after verdict, but rather first asserted it in his motion for postconviction relief. Failure to move for a mistrial constitutes a waiver. *Staples v. State, supra,* at 25.

## RIGHT TO ASSIST IN PRESENTATION OF DEFENSES.

Prior to trial, the defendant requested the right to participate as co-counsel in his defense, and this request was denied by the trial court. The defendant contends that he is constitutionally guaranteed the right to so participate in his defense.

The defendant first maintains that this right is guaranteed by the sixth and fourteenth amendments of the federal constitution. These amendments guarantee a criminal defendant the right to assistance of counsel, *Argersinger v. Hamlin,* 407 U.S. 25, 92 Sup. Ct. 2006, 32 L. Ed.2d 530 (1972) ; *Gideon v. Wainwright,* 372 U.S. 335, 83 Sup. Ct. 792, 9 L. Ed.2d 799 (1963), and the right, when he voluntarily and intelligently decides to do so, to proceed without counsel, *Faretta v. California,* 422 U.S. 806, 95 Sup. Ct. 2525, 45 L. Ed.2d 562 (1975).

The United States Supreme Court has never held, however, that the sixth amendment confers upon the accused a right to participate with counsel in his own defense. The Court's decision in the *Faretta Case,* the defendant argues, implies such a right by recognizing a defendant's right to conduct his own defense. However, the opinion

does not mention or suggest any right to both conduct one's own defense and be represented by counsel. Those federal courts which have considered the question have uniformly determined that the federal constitution creates no right to participate as co-counsel. *United States v. Wolfish,* 525 Fed.2d 457 (2nd Cir. 1975), *cert. den.* 423 U.S. 1059; *United States v. Hill,* 526 Fed.2d 1019 (10th Cir. 1975), *cert. den.* 425 U.S. 940; *United States v. Conder,* 423 Fed.2d 904 (6th Cir. 1970), *cert. den.* 400 U.S. 958; *United States v. Shea,* 508 Fed.2d 82 (5th Cir. 1975), *cert. den.* 423 U.S. 847; *Duke v. United States,* 255 Fed.2d 721 (9th Cir. 1958), *cert. den.* 357 U.S. 920; *United States v. Dellinger,* 472 Fed.2d 430 (7th Cir. 1972), *cert. den.* 410 U.S. 970.

The defendant's argument is also founded on art. I, sec. 7 of the Wisconsin Constitution, which provides in part that:

". . . In all criminal prosecutions, the accused shall enjoy the right to be heard by himself and by counsel; . . ."

Construing this language, this court has stated that:

"Every person *sui juris,* who is charged with crime, has the right to try his own case if he so desires. The constitution guarantees him the right to be heard 'by himself' *as well as* by counsel. . . ." (Emphasis added.) *Dietz v. State,* 149 Wis. 462, 479, 136 N.W. 166 (1912); *cf. Bartozek v. State,* 186 Wis. 644, 647, 203 N.W. 374 (1925); *Browne v. State,* 24 Wis.2d 491, 510, 511, 129 N.W.2d 175 (1964).

The defendant suggests the conjunctive language of the constitution, reflected in *Dietz v. State, supra,* should be construed as recognizing an absolute right of the defendant to actively participate, with his counsel, in the trial of his case. This court has never endorsed such a construction. Significantly, neither have the courts of other states approved such a construction. The con-

stitutions of twenty-six states contain provisions similar to art. I, sec. 7. Six others permit a defendant to defend by himself, or counsel, or both.[2]

The great weight of judicial authority is to the effect that a defendant has no constitutional right to proceed to trial with counsel and to simultaneously actively conduct his own defense. *See* cases collected in: Annot. *Right of defendant in criminal case to conduct defense in person, or to participate with counsel,* 77 A.L.R.2d 1233, sec. 4, pp. 1241–1248, and later case service; 3 Wharton's Criminal Procedure (12th ed.) sec. 413, p. 121; and Comment, *Self-Representation in Criminal Trials: The Dilemma of the Pro Se Defendant,* 59 Cal. L. Rev. 1479, 1494–1497 (1971).

The decision of the California Supreme Court in *People v. Mattson,* 51 Cal.2d 777, 336 Pac.2d 937 (1959), is representative. There the court said that:

". . . despite the constitutional . . . and statutory . . . provisions that defendant has the right to appear and defend in person *and* with counsel, defendant is not entitled to have his case *presented* in court *both by himself and by counsel* acting at the same time or alternating at defendant's pleasure. . . . So long as defendant is represented by counsel at the trial, he has no right to be heard by himself. . . ." *People v. Mattson, supra,* at 789. (Emphasis in original.)

Similarly, in *Moore v. People,* 171 Colo. 338, 467 Pac. 2d 50, 54 (1970), the Colorado Supreme Court, interpreting a constitutional provision providing an accused the right to appear and defend in person and by counsel, said:

"The defendant in a criminal trial has a constitutional right to be assisted and represented by counsel. He also

[2] State constitutional provisions are compiled in *Faretta v. California, supra,* at 422 U.S. 813, *fn.* 10; and in *Note, The Pro Se Defendant's Right to Counsel,* 41 U. Cinn. L. Rev. 927, 929 (1972).

has the constitutional right to defend himself providing that the trial judge shall find him competent to conduct his own defense. However, the language of our constitution cannot be interpreted to provide that the defendant can assert his right to be represented by counsel and at the same time actively conduct his own defense. . . ."

Thus the courts are in substantial agreement that a defendant has no constitutional right to be actively represented in the courtroom both by counsel and by himself.[3]

This rule recognizes that the conflicting interests of the accused and society involved in a criminal trial can be served only in an orderly proceeding. The trial judge must therefore have discretion to control the conduct of a trial to maintain dignity, decorum and orderly procedures; to avoid unnecessary delays; and to prevent the disruption of the judicial process by the accused's inept or disorderly self-representation. This approach reflects the fact that no right is more important to the accused and to society than the right to a fair, orderly trial.

In the present case, after receiving the defendant's request to participate in his defense at trial, the trial court scheduled a hearing on the request. At the hearing, the trial court ruled that defense counsel alone would be permitted to examine and cross-examine witnesses, although the defendant would be allowed to sit with his attorney at the counsel table, to confer privately with his attorney and to make suggestions privately during the *voir dire* of the jury and the direct and cross-examination of witnesses.

The court stated that this ruling was made, in the court's discretion, to best carry out the statutory pur-

---

[3] There are decisions to the contrary, however. *See, e.g., Loomis v. State,* 78 Ga. App. 153, 51 S.E.2d 13 (1948) (holding that an accused, although represented by counsel, had a right to cross-examine witnesses).

poses of sec. 906.11(1), Stats.;[4] that interrogation by the defendant's counsel would be effective for the ascertainment of truth; and that by limiting the questioning to his lawyer, needless consumption of time would be avoided and witnesses would be protected from harassment or undue embarrassment.

The defendant contends that the trial court's ruling was an abuse of discretion, apparently on the theory that the trial court was under a duty to affirmatively establish that the defendant wished to be represented by counsel before denying his request. This argument turns the trial court's duty upside-down.

There is a strong presumption against waiver of the right to counsel, *Von Moltke v. Gillies,* 332 U.S. 708, 723, 724, 68 Sup. Ct. 316, 92 L. Ed. 309 (1948); and this right may be relinquished only where a knowing and intelligent waiver is affirmatively shown. *Faretta v. California, supra,* at 835.

In accepting such a waiver in *Faretta, supra,* at 835, the Supreme Court emphasized that Faretta "was literate, competent and understanding, and that he was voluntarily exercising his informed free will." The instant case, in contrast, is not one in which the defendant asserted the constitutional right to proceed without counsel; it was rather a case in which the defendant appealed to the discretion of the trial court for permission to be actively represented by both himself and counsel.

The denial of the request of the defendant to participate in his trial along with his trial counsel was not an

---

[4] Sec. 906.11, Stats. ". . . (1) CONTROL BY JUDGE. The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (a) make the interrogation and presentation effective for the ascertainment of the truth, (b) avoid needless consumption of time, and (c) protect witnesses from harassment or undue embarrassment."

abuse of the trial court's discretion under sec. 906.11 (1), Stats.

We conclude our discussion of this issue with two observations. First, we do not view the situation in this case as comparable to that in which a party is represented by more than one counsel, and his lawyers wish to divide responsibility for examination and cross-examination of witnesses, with one lawyer assuming sole responsibility for each witness. The trial court may, in its discretion, permit such an arrangement. In the present case, however, the defendant asked "to participate in the examination and cross examination of all witnesses. . . ."

Second, this is not a case where the defendant knowingly and voluntarily waived his right to counsel and elected to conduct his own defense. Therefore, the case presents no issues as to the defendant's right to "standby" counsel, nor as to the circumstances in which the trial court would have a discretionary right to appoint such counsel over a defendant's objection.

## PRESENTENCE EXAMINATION REPORT.

Following his conviction, the defendant was committed to the H&SS Department for a presentence social, physical and mental examination, pursuant to sec. 975.01, Stats.[5] Pursuant to sec. 975.04(1),[6] an eight-page report

---

[5] "*975.01 Mandatory commitment for presentence examination.* If a person is convicted under s. 940.225(1) to (3) or under s. 939.32 for attempting to violate s. 940.225(1) to (3), the court shall commit the person to the department of health and social services for a presentence social, physical and mental examination. The court and all public officials shall make available to the department upon its request all data in their possession in respect to the case."

[6] "*975.04 Report of examination.* (1) Upon completion of the examination, but not later than 60 days after the date of the commitment order, a report of the results of the examination and

of the results of the examination and the recommendations of the department was sent to the trial court. This report, which did not recommend specialized treatment for the defendant, contained a psychiatric re-evaluation which stated in part:

"Mr. Moore was rather concerned as to how to approach the present examination. He claimed he wanted to maintain his innocent position for purposes of his appeal. However, he did state that he wanted to discuss the offense in regard to his being considered for the Sex Crimes Program. I did inform him that if he did admit to the offense and discuss the offense, that such information would be in the Hospital records and the referring court would receive a copy of our records. With this understanding, he did proceed to discuss the offense. The victim was a lady that he had known for a period of time and lived upstairs in the same apartment. He claimed that she was somewhat 'provocative' and that he did approach her to have intercourse, but was turned down . . . 'When I couldn't get it the straight way, like I wanted, then I resorted to raping her.' "

The reasons for the imposition of the sentence and the factors considered by the trial court are set forth in twelve pages of the record. At no time did the trial court refer to the foregoing statement contained in the presentence social, physical and mental examination. The trial court did, however, make a careful and extensive record of the factors it relied upon when imposing sentence. Those factors included a substantial record of past criminal activity, which the trial court described in detail. It then reviewed the aggravated circumstances of the crime itself, as established by the overwhelming evidence at trial.

On this record, the trial court sentenced the defendant, pursuant to sec. 975.05, Stats., to the maximum possible

the recommendations of the department shall be sent to the court."

term, a thirty-year sentence to run consecutively to a previously imposed sentence which he was serving at the time of his conviction.

The defendant now contends that he was prejudiced by the submission to the court of the inculpatory psychiatric report, and he asserts that divulgence of this information deprived him of equal protection and due process of law, and is contrary to sec. 905.04, Stats.

The defendant first points to limitations imposed upon the admissibility of psychiatric information obtained in ch. 971, Stats., examinations, and argues that principles of equal protection demand that similar limitations be imposed upon ch. 975 examinations. This argument is untenable.

Sec. 971.18, Stats., provides:

> *"971.18 Inadmissibility of statements for purposes of examination.* A statement made by a person subjected to psychiatric examination or treatment pursuant to this chapter for the purposes of such examination or treatment shall not be admissible in evidence against him in any criminal proceeding on any issue other than that of his mental condition."

This provision, which has reference to examinations conducted before or during trial, codifies the rule of *State ex rel. La Follette v. Raskin,* 34 Wis.2d 607, 150 N.W.2d 318 (1967). That case stands for the proposition that where an accused has made inculpatory statements during a compulsory mental examination, before conviction, his privilege against self-incrimination should be recognized and protected; as the defendant correctly asserts, under these circumstances, submission to a compulsory mental examination should not be dependent upon a waiver of the accused's privilege against self-incrimination. *State ex rel. La Follette v. Raskin, supra,* at 619, 622, 623.

These principles do not preclude consideration of a psychiatric report at the sentencing stage, however. This court held in *State ex rel. La Follette v. Raskin, supra,* that compulsory examinations must be allowed a wide scope, and that they may deal with matters within the privilege against self-incrimination. This privilege can be protected, and an accused's right to a fair trial guaranteed, the court held, by a sequential order of proof in which the issue of guilt is determined before issues of mental condition are considered. Thus the evidence derived from the examination "will not be admitted while the jury is determining the issue of guilt." *State ex rel. La Follette v. Raskin, supra,* at 623.

For the same reason, consideration of a presentence psychiatric report at the time of sentencing does not infringe upon the rights of the accused under the fifth amendment. The issue of guilt has already been determined. In *Cross v. State,* 45 Wis.2d 593, 173 N.W.2d 589 (1970), a convicted defendant argued that his temporary commitment to a sex deviate center for examination deprived him of a fair trial. This court rejected this contention, and said:

". . . At that stage he had already . . . been found guilty. This commitment for an examination had no relationship to the issue of guilt." *Cross v. State, supra,* at 603.

In the present case, therefore, as in trials employing the sequential order of proof prescribed by *Raskin, supra:*

". . . The defendant cannot be prejudiced because he has already been convicted, so the self-incrimination privilege has no application. . . ." *Note, Compulsory Mental Examinations and The Privilege Against Self-Incrimination,* 1964 Wis. L. Rev. 671, 681.

In addition, any possibility of prejudice is eliminated by the particular facts of this case. The psychiatrist's report stated that the psychiatrist specifically informed the defendant that if he admitted the offense, the referring court would receive a copy of the information, and also stated that the defendant understood this fact. Further, the trial court made no mention of the report, much less the inculpatory statements, in its meticulous review of the relevant sentencing considerations. It is clear, therefore, that there was no violation of equal protection.

The defendant's second theory is that he has been denied due process of law because the compulsory mental examination presents him with an unpleasant choice. If he incriminates himself in an effort to obtain sex deviate treatment, and special treatment is not recommended, he runs the risk of a harsher criminal sentence, but if he withholds the incriminating information, he reduces the likelihood that he will receive special treatment.

Whatever the risks inherent in the defendant's position, they are not of constitutional dimensions. A determination by the department that the defendant should not receive specialized treatment does not subject him to a "grievous loss" or deprive him of liberty or property without due process of law; there is no entitlement to such treatment. *Schmidt v. State,* 68 Wis.2d 512, 520, 228 N.W.2d 751 (1975). It cannot be said that the use of the presentence report is fundamentally unfair.

The defendant also insists that sec. 905.04(4)(b), Stats., prevents a trial court from considering the contents of a presentence report, other than the bare recommendation to grant or deny specialized treatment. This argument flies in the face of the language and purposes of sec. 975.04.

Sec. 905.04(4)(b), Stats., creates an exception to the physician-patient privilege for examinations ordered by a judge "with respect to the particular purpose for which the examination is ordered unless the judge orders otherwise." The defendant would construe "the particular purpose" for which ch. 975 medical and mental examinations are ordered to be narrowly limited to the bare yes-or-no determination with regard to specialized treatment, and would extend a physician-patient privilege over the communications and information which led to the physician's recommendation.

However, sec. 975.04, Stats., expressly provides that *"a report of the results of the examination and the recommendations* of the department shall be sent to the court." This language leaves no room for the construction proposed by the defendant. The department makes its recommendation as to treatment. When the department recommends treatment, the final determination as to whether the defendant is to be committed for such treatment is made by the court. Sec. 975.06.

### ABUSE OF DISCRETION IN SENTENCING.

The defendant contends that the trial court abused its discretion by considering two improper factors in imposing sentence. The first factor concerns juvenile criminal activities. The trial court stated that two considerations were important to its sentencing decision: The particular circumstances of the offense, and the "prior criminal conduct" or "past criminal record" of the defendant.

The trial court recounted the defendant's past conduct, citing juvenile entries shown on the presentence investigation report. However, the court specifically stated: ". . . These entries are not being considered by the Court at this time as being criminal conduct. Those juvenile

listings are not included by the Court at this time as criminal convictions, but they are simply mentioned at this time to indicate that Mr. Moore has had problems complying with law and order since a rather early age. . . ."

The trial court then noted that the first entry was listed for May 18, 1965, and the second was dated September, 1966.[7] The second entry stated that Moore had gone AWOL from the navy, stolen a car, been convicted in federal court, sentenced to two years probation, received a bad conduct discharge, and had been given a number of court martials. The trial court said that "[i]f the Supreme Court should ever review the record in this case or the reasons for the sentencing in this case, they should know that the second entry is taken into consideration. . . ."

The defendant argues that this record shows that the trial court improperly considered pre-*Gault*[8] juvenile contacts in fixing sentence. In *Stockwell v. State,* 59 Wis. 2d 21, 207 N.W.2d 883 (1973), this court held that pre-*Gault* adjudications in which juveniles were denied the right to counsel could not be considered in sentencing, even for the purpose of establishing a pattern of behavior.

The significant point is that the sentencing court may not consider pre-*Gault* juvenile *adjudications* or *convictions.* This requirement protects the sanctity of the rule of *Gideon v. Wainright,* 372 U.S. 335, 83 Sup. Ct. 792, 9 L. Ed.2d 799 (1963), that a person may not be tried for a felony unless he has a lawyer or has validly waived one, and the holding of *In re Gault, supra,* extending this

[7] Moore was born June 27, 1948, and therefore was eighteen at the time of the second entry.

[8] *In re Gault,* 387 U.S. 1, 87 Sup. Ct. 1428, 18 L. Ed.2d 527 (1967).

principle to juvenile adjudications. Convictions or adjudications obtained in violation of these rules may not be used to support guilt or enhance punishment for another offense because this would erode the right to counsel. *See, Stockwell v. State, supra,* at 31.

In the present case, the record shows that no juvenile adjudications were involved. The incident of May 18, 1965, cited by the trial court, was a two-day detention after Moore ran away from home and did not involve a court hearing. He was twice briefly detained by police as AWOL, and was returned to the navy, but no adjudications are indicated on the record. The conviction in 1966 was for a federal felony offense, and did not involve juvenile authorities. Nor did the encounters with the military justice system or subsequent entries involve juvenile adjudications. No *Gault* rights are here implicated.

Further, the trial court emphasized that these entries were not considered as criminal convictions. The sentence imposed was also based on the second ground of the aggravated circumstances that had attended the crime. As in *Stockwell v. State, supra,* the trial court was strongly influenced by the gravity of the crime and the defendant's acts. Under these circumstances the trial court did not abuse its discretion, and this is not one of the " 'unusual cases' " in which the power to modify a sentence should be exercised. *Stockwell v. State, supra,* at 34, 35.

The defendant next contends that the trial court was improperly influenced by the prosecutor's statement at sentencing that the defendant had fabricated an alibi. The defendant cites *Knecht v. State,* 68 Wis.2d 697, 229

N.W.2d 649 (1975), in which this court stated that a defendant's sentence may not be increased to include an additional term for the crime of perjury.

The facts in the *Knecht Case* are instructive here. There, the trial judge had denounced the defendant, at the time of sentencing, for having perjured himself. Here, the record is barren of any reference by the trial court to the truthfulness or falsehood of the defendant's testimony. Furthermore, in *Knecht, supra,* this court found nothing to indicate that the trial court had considered the alleged perjury in imposing sentence. This court therefore held that the trial court had not abused its discretion. In the case before us, as in *Knecht, supra,* we find nothing in the record which would lead us to conclude that the trial court abused its discretion when imposing sentence.

The defendant next asks the court to reduce his thirty-year sentence "in the interests of fundamental fairness" because the maximum penalty for rape has, subsequent to the imposition of his sentence, been reduced from thirty to fifteen years. Ch. 184, Laws of 1975, effective March 27, 1976, and codified as sec. 940.225, Stats. The repeal of the former statute does not in any way remit, defeat or impair the defendant's criminal liability for the offense committed. Sec. 990.04, Stats. The defendant's argument would be equally applicable in the case of every prisoner now serving a sentence of more than fifteen years for the offense of rape, and, moreover, suggests that every reduction, by the legislature, of the maximum prison term for an offense must be given retroactive effect.

The defendant had a history of criminal conduct, and the crime for which he was convicted was deliberate and aggravated. It involved a deadly weapon, the use of force, and injury to the victim which was visible at the time of trial, nearly two years after the incident. As the trial court observed, the record is devoid of any miti-

gating circumstances. The interests of justice, therefore, do not favor reduction of the sentence imposed.

Finally, the defendant seeks credit against his sentence for four days allegedly spent in the Brown county jail on a parole hold prior to the revocation of his parole on a previous conviction. This argument is misplaced.

*State ex rel. Solie v. Schmidt,* 73 Wis.2d 76, 242 N.W. 2d 244 (1976), cited by defendant, held that a defendant would be given credit, against the sentence he was required to serve when his parole was revoked, for pre-revocation jail time. Here the defendant seeks credit, not against the sentence for the crime for which he was paroled, as was allowed in *Solie, supra,* but rather credit against the sentence for the unrelated rape charge. It is unnecessary to consider whether the holding of *Solie* should be extended to a situation such as this.

This court has conclusively held that a four-day delay, precisely the delay involved here, does not rise to constitutional proportions, and is not so unreasonable as to offend either the due process clause or the equal protection clause of the United States Constitution. *Kubart v. State,* 70 Wis.2d 94, 105, 106, 233 N.W.2d 404 (1975); see, *State ex rel. Solie v. Schmidt, supra.*

The judgment of the trial court and the orders denying the defendant's motions for a new trial and postconviction relief pursuant to sec. 974.06, Stats., are affirmed.

*By the Court.*—Judgment and orders affirmed.

ABRAHAMSON, J. *(dissenting in part).* Art. I, sec. 7 of the Wisconsin Constitution provides in part that ". . . in all criminal prosecutions, the accused shall enjoy the right to be heard by himself *and* by counsel. . . ." (Emphasis added.) Under this provision a defendant has the clear constitutional right to be his own sole counsel. A defendant has an equally clear constitutional right to be represented by an attorney.

The defendant here asks to be represented by counsel and at the same time to participate in his trial.[1] The majority denies the defendant this constitutional right under Art. I, sec. 7, by changing the word "and" in the constitution to the word "or." The majority thus interprets our constitution to mean that an accused has a right to representation either by self or by counsel but not by both. In reaching this result the majority places heavy—if not exclusive—reliance on a similar construction by other state courts of their state constitutions. I approach the task of construing this section somewhat differently.

The starting place to interpret the constitution is the language itself. I concede that most, if not all, statutory or constitutional language is capable of bearing several meanings. Nevertheless, the first-reading, plain meaning of this constitutional language is that a defendant can be represented by himself, by counsel, or by both himself and counsel. Not only is this interpretation the obvious one, but also it would enhance, rather than limit, the rights guaranteed to people in Wisconsin. Thus this interpretation should be the one adopted by this court

---

[1] The defendant's letter of February 11, 1974 addressed to Judge Donald W. Gleason stated as follows:

"Dear Sir;

"I wish to inform the Court that it is my wish and my intent to participate in the examination and cross examination of all witnesses for and against me in the trial I am confronted with on March 26th. I feel my best interests as well as my Constitutional guarentees [sic] will be best safeguarded by the Court recognizing me, the Defendent [sic] as co-council [sic] in which capacity I shall be able to demand the nature and cause of the accusations against me and to meet the witnesses face to face, as well as enjoy the Constitutional Right of assisting in my own defence [sic] as is ascertained by the Constitution of the United States and out lined in Due Process procedures.

"I also wish to inform the Court that the Defence [sic] will, in all probability expect to use 'voir dire' examination and challenges for cause in the examination of the prospective jurors to determine competency and qualifications of jury members."

unless the interpretation violates other rights guaranteed to the people or is not viable.

The majority does not suggest that interpreting the provision consistently with its plain meaning would create a conflict with other guaranteed rights. Rather, the majority emphasizes pragmatic concerns. The majority says that interpreting the constitution to require the defendant to choose between self-representation and representation by counsel is necessary because "the conflicting interests of the accused and society involved in a criminal trial can be served only in an orderly proceeding." Stated another way, the majority reasons that granting a defendant the constitutional right to be represented by counsel and at the same time to participate actively in the trial would result in disorderly proceedings; *a fortiori,* says the majority, there can be no constitutional right for a defendant to participate in the trial if he is represented by counsel.

I agree that justice requires an orderly proceeding, and I recognize that under certain circumstances a defendant's participation in the trial might interfere with orderly procedure. However, the same risk exists where a defendant without counsel represents himself; and the possibility (or even probability) of this risk materializing does not justify interpreting the Wisconsin constitution so that a defendant's right to participate in the trial is not protected by the state constitution.

I would interpret the state constitution to guarantee to a defendant the right to represent himself, to be represented by counsel, or to be represented by both himself and counsel. However, the defendant's constitutional right to be represented by both counsel and himself is subject to reasonable procedural regulations by which the trial court can assure the defendant his constitutional right to a fair and orderly trial and reliability in the guilt-determining process. The goals of fairness and reliability are not fostered by the all-or-nothing approach

taken by the majority, *i.e.*, by forcing the defendant to choose, as a matter of constitutional right, between self-representation and representation by counsel. I urge that "the state should keep to a necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources. . . ." *People v. Ruiz*, 263 Cal. App.2d 216, 227, 69 Cal. Rptr. 473 (1968).

The State does not argue that the criminal defendant who is represented by counsel should never be allowed to participate in the conduct of the trial proceedings. Rather it argues that the defendant's right does not rest on the state constitution but on sec. 906.11, Stats., which gives the judge discretion over trial procedure. This court should not substitute a statutory right for a constitutional right. A right based on a statute can easily be changed by the legislature; a constitutional right can be changed only by the vote of the people.

The State asserts, and the majority agrees, that the trial court properly exercised its discretion under sec. 906.11 in its ruling on the extent to which the defendant may participate in the trial. I disagree.

In the present case the defendant wrote the court requesting to act as co-counsel. The letter is set forth in the margin at note 1. The majority says that the trial court scheduled a "hearing" on the request. The "hearing" referred to in the majority opinion consisted merely of the trial court's announcing its ruling. There was no hearing in the true sense of that term. Neither the defendant nor his attorney nor the district attorney had an opportunity to speak. No one was allowed to advise the court as to how the defendant wished to participate in the trial or how counsel might view defendant's participation.[2]

---

[2] If defendant participates in the trial, the role of the attorney must be clarified. To what extent is the attorney forced "to sur-

The majority appears to reason that the trial court's determination not to allow the defendant to participate actively was proper because of the defendant's expressed desire to examine "*all* witnesses." The majority appears to say that this expression of a desire to examine "all witnesses" distinguishes the case at bar from the typical "co-counsel" situation "in which a party is represented by more than one counsel, and his lawyers wish to divide responsibility for examination and cross examination of witnesses, with one lawyer assuming sole responsibility for each witness." The implication of the majority's decision is that the trial court could have, in its discretion, permitted the defendant to act as co-counsel had the defendant so requested. The defendant specifically requested that he be considered as co-counsel. The trial court in this case should have explored the ground rules for defendant's participation as co-counsel. The trial court's failure to do so constitutes error.

I conclude that an accused in a criminal prosecution has a constitutional right to have counsel and at the same time to participate actively in the trial, but that the defendant's right to participate is not absolute or unlimited. Defendant's right is to be defined and proscribed by the trial court so that under the circumstances of the case the cause of justice will be served and the orderly conduct of judicial proceedings will not be hampered. Even if I were to view defendant's right to participate as a statutory, not a constitutional, right, I conclude that the trial court did not exercise its discretion as required under sec. 906.11(1), Stats. Thus I conclude that the trial court did not perform the function required of it under either the constitution or the statute.

---

render any of the substantial prerogatives traditionally or by statute attached to [his] office." *People v. Mattson,* 51 Cal.2d 777, 336 P.2d 937, 941 (1959).