VOITH, Plaintiff-Respondent, v. BUSER,
Defendant-Appellant.

*No. 75–588. Submitted on briefs April 6, 1978.—Decided June
6, 1978.*
(Also reported in 266 N. W. 2d 304.)

For the appellant the cause was submitted on the brief of *Gerald L. LaBarge,* and *Law Offices of Alvin H. Eisenberg, S.C.* of Milwaukee.

For the respondent the cause was submitted on the brief of *Herbert L. Usow* of Milwaukee.

HEFFERNAN, J.  This is an appeal from a judgment of the county court of Milwaukee county which granted the plaintiff, Wolfgang Voith, judgment in the sum of $500 compensatory damages and $1,000 punitive damages in a civil action for assault and battery.

The plaintiff, Wolfgang Voith, alleged that he was at work as sales manager of Wares Cycles in Wauwatosa on May 25, 1974, when the defendant entered the shop with the intention of making a purchase.  Voith alleged that Buser committed an assault and battery upon him by threatening him and striking him in the face, breaking his glasses, causing lacerations to the face and re-

sulting pain. It was also alleged that the assault and battery was intentional, wilful, and malicious.

Buser answered, claiming that he was provoked into striking the plaintiff because the plaintiff, without consent, grabbed the defendant's credit card from him, threatened him with physical violence, and put him in apprehension of bodily harm. He claimed that he only used reasonable force to defend himself and to repel the attack of Voith.

The answer contained three counterclaims, one, that Voith had committed an assault upon the defendant, and two additional counterclaims alleging battery by Voith. The counterclaims were dismissed following a motion for directed verdict, and the case went to the jury only on the plaintiff's complaint.

Because we reverse for errors in the course of trial, we will not detail the evidence, for the testimony at a subsequent trial may produce facts different than those now of record. Basically, however, there was testimony by Voith that, on the day in question, the defendant Buser entered the shop for the purpose of buying bicycle tires and inner tubes. He attempted to make the purchase by the use of a Master Charge card. When the charge card was presented to the cashier, she saw that the card was not signed. She asked Buser to sign the card. He refused to sign it, giving the explanation that, were he to lose the card and his signature were on it, someone could copy the signature. The cashier refused to complete the sale, and she brought the matter to the attention of Wolfgang Voith, who was the manager of the sales shop. Voith approached Buser from behind the counter. Buser remained on the other side. Buser again gave his explanation of why he refused to sign the card. Voith then apparently told Buser that the credit card, if not signed by the assessor, was invalid and that, unless signed, it could be picked up and returned to Master Charge.

At this point, the testimony became divergent. Buser stated that the card was in the possession of Voith. Buser said he would not leave until he got the credit card back. Then, according to Voith, Buser "got what I would term a little bit nasty, created a disturbance, was rather loud." Thereafter, Voith came from behind the counter, with the apparent intention of removing Buser from the premises. Two other employees came around the counter with Voith.

Voith again asked Buser to leave, and Buser stated, "The first man that touches me is going to get it." Voith took hold of Buser's elbow and, according to Buser, because three men were coming at him and because he feared for his safety, Buser struck Voith in the face.

As stated above, the details of this altercation were disputed. The jury did, however, return a verdict for the plaintiff, and were we to view the evidence in the light most favorable to the jury's verdict, the jury was entitled to believe that Buser was causing a commotion in the cycle shop, that the plaintiff proceeded peaceably to escort the defendant out of the store by holding the defendant's elbow and guiding him toward the door, that the defendant stopped and again attempted to argue with the plaintiff, and that the defendant then put his Master Charge card on the counter, whereupon the plaintiff picked it up, and at that point the defendant struck the plaintiff in the face with sufficient force to break the plaintiff's glasses and to cause minor cuts to his face.

■ This verdict, however, cannot stand, because of prejudicial error during the course of the trial. Prejudicial error warranting reversal occurred when plaintiff's counsel called Buser adversely. After preliminary questions, Buser was asked whether he had been convicted of a crime. He answered, "Yes." When counsel attempted

to elicit the nature of the crime, objection was made and a hearing was held in chambers. The trial judge ruled that the plaintiff would be allowed to elicit testimony showing that Buser had been convicted of the crime of misusing a credit card. The judge stated that he was allowing this testimony because of its bearing on the credibility of the defendant and because such information in respect to the nature of prior crimes was permissible under the new rules of evidence.

We conclude that the trial judge erred in both respects. We have, in the first place, stated that impeaching evidence to attack credibility is inappropriate and inadmissible prior to the time that any issue of credibility has arisen in the course of trial. *Underwood v. Strasser,* 48 Wis.2d 568, 180 N.W.2d 631 (1970) ; *Alexander v. Meyers,* 261 Wis. 384, 52 N.W.2d 881 (1952).

In addition, the rules of evidence effective on January 1, 1974, do not change the prior rules in respect to admissibility of evidence of prior convictions. Sec. 906.-09 of the present rules of evidence provides :

"906.09 Impeachment by evidence of conviction of crime.

"(1) GENERAL RULE. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible. The party cross-examining him is not concluded by his answer.

"(2) EXCLUSION. Evidence of a conviction of a crime may be excluded if its probative value is substantially out-weighed by the danger of unfair prejudice.

"(3) . . . .

"(4) JUVENILE ADJUDICATIONS. Evidence of juvenile adjudications is not admissible under this rule.

"(5) . . . ."

Were these rules looked at *ab initio* without the gloss of the prior decisions of this court upon which the rules are based, it is at least arguable that a cross-examining

counsel could place in evidence the particulars of a crime of which a witness had previously been convicted.

The commentaries to the rules of evidence provide, however, that the quoted sections of the rules do not change the prior law in this respect. The commentary of the Judicial Council, 59 Wis.2d R182 (1973), states:

"The rule does not change the restrictions upon the nature and extent of the inquiry with respect to criminal convictions when permissible. [*Underwood v. Strasser*, 48 Wis.2d 568, 180 N.W.2d 631 (1970), *State v. Hungerford*, 54 Wis.2d 744, 196 N.W.2d 647 (1972)] . . . ." (Brackets in quotation)

Under the prior law, which is specifically incorporated by the commentary to the present rules of evidence, a witness could be asked whether he had been convicted of a crime and how many times, but, if these questions were answered truthfully and accurately, no further questions could be asked. *Scott v. State*, 64 Wis.2d 54, 60, 218 N.W.2d 350 (1974); *State v. Hungerford*, 54 Wis.2d 744, 196 N.W.2d 647 (1972). The rules were applicable in both criminal and civil cases. *Underwood v. Strasser*, 48 Wis.2d 568, 570, 180 N.W.2d 631 (1970).

Although this court has not heretofore been directly confronted with the issue of whether the revised rules of evidence permit inquiry into the nature of a previous conviction where the witness truthfully and accurately acknowledges that there has been a conviction, at least two recent opinions of this court implicitly conclude that the restrictions on the use of convictions for impeachment remain unchanged. *Staples v. State*, 74 Wis.2d 13, 245 N.W.2d 679 (1976)[1]; *Moore v. State*, 83 Wis.2d 285, 265 N.W.2d 540 (1978). Each of these cases arose subsequent to the effective date of the new rules of evi-

[1] *Staples v. State* was overruled on other grounds in *Loveday v. State*, 74 Wis.2d 503, 247 N.W.2d 116 (1976).

dence. Each of them embodies the assumption that the limitations that existed prior to the effective date of the new rules of evidence continue. In *Moore v. State,* ante, 285, 295, 265 N.W.2d 540, we stated:

"When a witness has truthfully testified as to his prior convictions on direct examination, nothing further may be said about them on cross-examination."

In *Staples v. State,* at 24, this court specifically relied upon opinions of this court which antedated the new rules of evidence to show the approved manner in which evidence of prior convictions may be introduced.

We conclude that, where accurate and responsive answers are given to the questions, "Have you been convicted of a crime?" and "How many times?," the examiner is concluded and is not permitted to introduce proof of the nature of the conviction. We also conclude that the position taken by the Attorney General in 63 O.A.G. 424 (1974) is incorrect.

The admission, therefore, of the evidence of prior crime involving a credit card was erroneous and prejudicial. The evidence erroneously admitted showed that the defendant had been convicted twenty-three years earlier for the misuse of a credit card.

In the instant case, it was the position of Voith, the plaintiff, that his conduct in respect to Buser was appropriate, because Buser's alleged failure to sign the credit card was a misuse of the Master Charge card privilege. The prior conviction, improperly admitted, could only have the effect of prejudicing the jury by indicating a propensity to commit a crime involving the misuse of a credit card. The jury, moreover, was not informed that this incident occurred twenty-three years before at a time when the defendant was under age.

While the improper admission of evidence of a prior conviction is not *ipso facto* prejudicial, we cannot conclude in the instant case that this evidence did not taint the jury's verdict and, at the minimum, create jury confusion. The evidence was conflicting, and the jury may well, in the absence of this prejudicial testimony, have chosen to believe Buser's version of the altercation. Because of this erroneous admission of clearly prejudicial evidence, the judgment must be reversed and the cause remanded for a new trial.

We also note that it is argued by Buser that the evidence of the prior conviction was explicitly inadmissible under the new rules of evidence. It is asserted that the prior conviction involved a juvenile proceeding, and under sec. 906.09 (4), Stats., evidence of juvenile adjudications are not admissible. There is, however, nothing in the record to show that the adjudication for the prior misuse of a credit card was in juvenile court. The defendant at the time of the prior proceeding was of an age at which jurisdiction could have been waived to an adult court. In the absence of a showing of record that this was a juvenile adjudication, we cannot conclude the evidence of the prior adjudication to be inadmissible for that reason.

An additional error is alleged and such error was acknowledged by the trial judge but found not to be prejudicial on motions after verdict. At trial, the defendant attempted to have a deposition of Kevin Brown admitted into evidence on the ground that it was admissible under sec. 887.12 (7) (c) 1, Stats. 1973.[2] The

[2] "(7) Use of Depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under chs. 901 to 911, may be used against any party who was present or represented at the taking

trial judge concluded, however, at trial that the deposition was inadmissible, even under sec. 887.12(7)(c)1, because there was no showing that the witness was "unavailable" within the meaning of sec. 908.04.

The trial judge recognized, on motions after verdict, that the statutes in effect at that time provided two mechanisms for the admission of deposition evidence. In recognizing his error, he acknowledged that a deposition may be admissible under sec. 908.045(1), Stats., irrespective of where the witness lives, if the witness is unavailable at trial and the adverse party had an opportunity to cross-examine. He stated the deposition was properly admissible under sec. 887.12(7)(c)1, irrespective of unavailability, if the defendant lives more than thirty miles from the place of trial. The trial judge acknowledged that, in his ruling on admissibility at trial, he incorrectly relied upon the "unavailability" requirement of sec. 908.04. He nevertheless concluded that the error was not prejudicial, because Brown's testimony contained inadmissible character evidence and other evidence which was merely cumulative to that produced at trial.

We have no reason to fault the trial judge's conclusion that the exclusion of the Brown deposition was not prejudicial in the context of the original trial. However, the deposition *per se* was admissible and is admissible if offered at retrial of this case. It is, of course, subject to objection at trial; and portions of the deposition

---

of the deposition or who had due notice thereof, in accordance with any one of the following provisions:

". . .

"(c) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

"1. That the witness lives more than 30 miles from the place of trial or hearing of the action, proceeding or matter in which his testimony is desired or beyond the reach of the subpoena of the court."

may well be inadmissible, notwithstanding the fact that no objections were made when the deposition was taken. *See,* sec. 887.12(5)(a), Stats. 1973.

The testimony in the Brown deposition was largely cumulative and, were the improper rejection of the Brown deposition the only error at trial, we could not conclude that the suppression of that evidence was so significant as to affect a substantial right of the defendant. We would not on that issue alone order a new trial.

We are also satisfied that the court erred in reinstructing the jury. After the jury had deliberated for over an hour, it asked again to be instructed in respect to assault and battery. The trial court then reread the original instruction, dealing with bodily harm battery, Wisconsin Jury Instruction—Civil 2005. It then, for the first time, read an additional instruction, Wisconsin Jury Instruction—Civil 2010, involving an offensive bodily-contact battery. It was error to give the additional battery instruction, because the plaintiff's case was in no way based on the theory of offensive bodily contact, but rather on a theory of causing bodily harm.

The instruction was inappropriate to the issues posed and to the facts developed by the evidence. We do not, however, consider the erroneous instruction prejudicial. It was undisputed that the plaintiff sustained bodily harm. Moreover, it is difficult to see any prejudice which could possibly result to the plaintiff because there were no facts adduced at trial which could lead to a jury verdict finding an offensive contact by the defendant rather than one which caused bodily harm. It is not probable that the inappropriate instruction could have misled the jury. Such an instruction should, however, not be repeated on retrial if the proof at retrial

demonstrates only bodily harm and not an offensive bodily contact.

Error is claimed also because the three counterclaims were dismissed on plaintiff's motion for directed verdict. Because we order a new trial, the counterclaims are reinstated, and their disposition is subject to appropriate proceedings on retrial. We point out, however, that a verdict should be directed only when the evidence gives rise to no dispute as to material issues or only when the evidence is so clear and convincing as to reasonably permit unbiased and impartial minds to come to but one conclusion. *Crotteau v. Karlgaard,* 48 Wis.2d 245, 248, 179 N.W.2d 797 (1970).

Moreover, we have stressed repeatedly that, except in the clearest of cases, a trial judge should withhold ruling on a directed verdict and ordinarily permit the question to go to the jury with leave to re-assert if necessary after the verdict. *Zillmer v. Miglautsch,* 35 Wis.2d 691, 699, 151 N.W.2d 741 (1967) ; *Hoffman v. Wausau Concrete Co.,* 58 Wis.2d 472, 479, 207 N.W.2d 80 (1973).

Because of the necessity of remanding this case for a new trial, we express no opinion on the sufficiency of the evidence. Because the damages remain an issue to be considered on the new trial, we express no opinion in respect to the adequacy or excessiveness of the jury award for either compensatory or punitive damages.

*By the Court.*—Judgment reversed and cause remanded for a new trial.