## STATE OF CONNECTICUT *v.* DAVID GETHERS
## (11569)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued June 13—decision released September 3, 1985

*Beth A. Merkin* and *Holly J. Bray,* certified legal interns, with whom were *Michael R. Sheldon* and, on the brief, *Todd D. Fernow,* for the appellant (defendant).

*Steven M. Sellers,* deputy assistant state's attorney, with whom, on the brief, were *Michael Sullivan* and *Carl J. Schuman,* assistant state's attorneys, for the appellee (state).

ARTHUR H. HEALEY, J. This appeal involves various aspects of a criminal defendant's right to self-representation at trial, including whether he has a right to hybrid representation. On August 22, 1980, the defendant was charged by an information with tampering with a witness in violation of General Statutes § 53a-151. After entering a plea of not guilty to the charge, he was tried by a jury and found guilty.

On appeal, he raises claims that the trial court erred in that it: (1) caused him to conduct a portion of his trial alone without first obtaining a valid waiver of his state and federal constitutional right to the assistance of counsel; (2) violated his state constitutional right to hybrid representation when his request to proceed as co-counsel was denied; (3) expressly restricted the role of his standby counsel in violation of Practice Book § 964; and (4) violated Practice Book § 632 in originally granting his defense counsel's motion to withdraw. We find no error.

Some elaboration of the pertinent pretrial proceedings is necessary for disposition of the defendant's appeal. Subsequent to being charged with the present offense, the defendant applied for and was found eligible to receive the services of a public defender. Attorney Judith Hoberman was appointed to represent him. Upon his plea of not guilty and election of trial by jury, the defendant's case was assigned for trial on December 11, 1980.

Prior to the voir dire of the prospective jurors, the trial court was informed by Hoberman that the defendant had "expressed" to her "an interest to conduct a

portion of his own defense." Hoberman informed the trial court that she could not appear as co-counsel with the defendant, that she had suggested to him that he file a pro se appearance, and that she would move to withdraw her appearance for the defendant. Hoberman further informed the court that she would be willing to appear as the defendant's standby counsel in the event he elected to proceed pro se.[1]

The trial court then cautioned the defendant of the dangers of self-representation. Specifically, the trial court advised the defendant of the gravity of the offense with which he was charged, that if convicted he faced a possible sentence of up to five years of imprisonment, and that "a trial, particularly a trial to the jury, is going to require a very real degree of expertise to be properly conducted." In explaining the latter point, the court cited the expertise needed to argue intelligently about the admissibility of evidence.[2] The court then in

---

[1] Attorney Judith Hoberman's opening statement to the trial court was in its entirety as follows:

"Ms. Hoberman: If I may proceed preliminarily. My client, although some of the papers refer to him as David Gethers, has formally changed his name to Donald Galland and during the course of these proceedings he wishes to be referred to as Donald Galland. I had anticipated filing a motion right now.

"Before we do that, however, Mr. Galland has expressed to me an interest to conduct a portion of his own defense. I have discussed that it is impossible for me to co-counsel his case with him. If he wishes to conduct his defense, I suggested that he file a pro se appearance and that I move to withdraw as counsel in the matter. I would be happy to advise him and sit at the counsel table with him as adviser."

See *State* v. *Gethers*, 193 Conn. 526, 527 n.1, 480 A.2d 435 (1984), regarding the defendant's legal change of name.

[2] The following is the trial court's advisement through this point in time:

"The Court: All right. Mr. Galland, you are charged with a very serious offense. Tampering with a witness is classified—it's what we call a class D felony. Now, that title doesn't mean much to you, but it is sufficiently serious so that what you face is possible punishment of up to five years. You have got to realize that a trial, particularly a trial to the jury, is going to require a very real degree of expertise to be properly conducted. For instance, there may well be questions as to admissibility of evidence. I doubt

no uncertain terms warned the defendant of the dangers of self-representation: "You're putting yourself in a terrible position in attempting to represent yourself. You are not really cognizant of how a trial is conducted, what the appropriate law is, what the appropriate rules of evidence are and that sort of thing. You realize to be a lawyer requires three years of graduate school just to start. Now you can't possible [sic] have that background expertise."

The defendant's response to the court's statements was: "What you said is quite true—As a matter of fact absolutely true, but what you don't understand is that my counsel—I discussed with my counsel the case and she is just not going to submit things that I want submitted, that I feel need to be submitted, to the jury to understand what's fully going on here." Upon the court's suggestion that, because of his counsel's "expertise," a decision not to develop "certain things" may have been necessary "under the rules of evidence," the defendant declared: "Oh, yes they can be brought out and they will be brought out if I have anything to say about this. I am the one being accused. They drag me in here, accuse me and there's no way I can see myself sitting here not saying anything in my defense."

Hoberman then renewed her motion to withdraw. The trial court expressly asked the defendant whether he realized that he was "entitled to be represented," to which the defendant answered, "[r]ight." The trial court asked the defendant whether he "realize[d] that this can run into a lot of technicalities, in the course

---

very much that you would have the training and the background to be able to argue intelligently as to whether or not a particular piece of evidence was admissible or not.

"Now, this can come up in several different ways. It may be that the state is offering evidence to which a proper objection can be made and you won't know it. It may be that you are attempting to offer evidence on your own behalf which is not admissible and you have framed your defense around this thing that isn't admissible."

of a trial, of which you are unaware." The defendant responded that he did not "want to conduct a full trial," but rather "[a]ll I want is a small portion—a little say. [Attorney Hoberman] will be conducting the trial." The court then said: "Well, I can't force a lawyer on you," and the defendant stated: "So, please don't let her go." The court further inquired of the defendant whether "[k]nowing your rights and knowing the difficulties with which you are facing, nevertheless, you want to conduct your own defense?" The defendant responded, "I don't want to conduct the whole trial, I just want to be able to have, you know, a say, a few things here and there. She would counsel me, of course, before I say it."[3]

The trial court then proposed that if the defendant filed "a pro se appearance" the court would grant Hoberman's motion to withdraw but would also order her "to remain in attendance as standby counsel."[4] The court then instructed the clerk to ensure that the defendant was provided a pro se appearance form. Hoberman requested that the defendant be given "just a few moments to consider your Honor's latest proposal," but the defendant retorted: "I understand it perfectly well." The court warned the defendant that

---

[3] The trial court then attempted to clarify the nature of the defendant's position:

"The Court: Well, let me get it straight. You say you want to say a few things. Do you mean you yourself want to testify?

"Mr. Galland: No. No.

"The Court: O.K. You have the absolute right not to testify; you realize that? No inference can be drawn for failure to testify.

"Mr. Galland: I am the one who has to suffer the consequences."

[4] The following is the trial court's oral proposal to the defendant: "What I am going to do is this, sir. If you will file a pro se appearance, I am granting the motion of your present counsel to withdraw. However, I will order her to remain in attendance as stand-by counsel. I think sometime during the trial you are going to finally realize you are out of your depth and if she stays in the room as stand-by counsel and is available to you for consultation, she will be available to step in when we reach that stage, which I am sure we will, when you realize this is something above and beyond you."

further delay of the trial would not be permitted and directly asked the defendant: "Are you entering a pro se appearance or are you not?" The defendant responded affirmatively: "That's correct." The defendant filed his pro se appearance with the trial court which then granted Hoberman's motion to withdraw her appearance as the defendant's counsel. The court, however, appointed Hoberman as standby counsel for the defendant and directed her "to remain in attendance."

The defendant thereafter presented his opening statement to the jury panel, in which he represented that he was a student "at Yale College with the Special Division Program," and he personally conducted the voir dire during jury selection. Just prior to the presentation of evidence, the defendant orally moved to dismiss the charges against him on the ground that there was "no probable cause in the first place to arrest me." During the hearing on this motion, the defendant, as he asserts in his brief, "requested that his counsel be re-appointed and withdrew his appearance."[5] Noting that the defendant had already "made a knowing waiver of the right to be represented by counsel," the court granted the defendant's request, and the pro se appearance was withdrawn. Later during the actual trial, the defendant changed his position and requested and was granted the court's permission to conduct his

---

[5] The following is pertinent to the defendant's request:

"[Assistant State's Attorney]: Your Honor, the explanation having been made on the record, after the defendant's request, I would now ask the court to again question the defendant as to whether or not he wishes to continue to now having been informed under the conditions stated on the record.

"The Court: All right. I asked you before if you wanted to withdraw your pro se appearance and have Ms. Hoberman appear on your behalf and your answer was yes. Now, you have heard an explanation by her as to her understanding of what her role will be. Having heard that explanation, do you still wish to withdraw your pro se appearance and have Ms. Hoberman represent you?

"[The Defendant]: Yes."

representation on a pro se basis.[6] Hoberman's appearance was again withdrawn, and the court appointed her as the defendant's standby counsel. The defendant then conducted the balance of his trial, including the presentation of final argument to the jury.

## I

We address first the defendant's claim that the trial court "caused him to conduct a portion of his trial alone without first obtaining a valid waiver" of his state and federal constitutional right to assistance of counsel. Specifically, the defendant argues that, because the "waiver" of his right to counsel should be held invalid on the ground that the record does not clearly demonstrate that he made "an unequivocal request to represent himself," he is entitled to an automatic reversal of his conviction in that he had represented himself during a portion of the proceedings when the right to counsel had attached.

The state does not dispute that the defendant had a state and federal constitutional right to assistance of counsel during both the voir dire of the prospective jurors and the pretrial hearing on the defendant's pro se motion to dismiss. In *State* v. *Gethers,* 193 Conn. 526, 480 A.2d 435 (1984), it is implicit that the court viewed the right to counsel as having attached during the stage of the proceeding involved in the voir dire of prospective jurors. Id., 532–33. This court also regards the voir dire under Connecticut law as "an

[6] A review of the transcript reveals that the defendant had a "substantial disagreement over the defense" with his counsel, Hoberman, who again requested permission to withdraw as counsel. See footnote 9, infra. The defendant explicitly agreed to proceed pro se and to have Hoberman available only in the role of standby counsel. The trial court then inquired of the defendant as to whether he understood that he had a right to counsel, that he was facing a felony charge with "the possibility of a substantial amount of prison time," and that in light of "all that, nevertheless, you want her to get out and you will conduct the trial." The defendant responded affirmatively to all these questions.

integral part" of the criminal trial and a "critical stage" of the proceeding. *Coleman* v. *Alabama,* 399 U.S. 1, 7, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970); *State* v. *Ibraimov,* 187 Conn. 348, 357, 446 A.2d 382 (1982); *State* v. *Canady,* 187 Conn. 281, 289, 445 A.2d 895 (1982); 3 Wharton, Criminal Procedure (12th Ed. Torcia 1975) § 411. We turn next to the primary component of the defendant's claim, i.e., the record does not clearly demonstrate that he made an unequivocal request to represent himself.

A criminal defendant is guaranteed the right to assistance of counsel under both the federal; see *Gideon* v. *Wainwright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); and the state constitutions. See *State* v. *Gethers,* supra, 533. A criminal defendant also has the right to appear pro se in a state criminal trial "when he voluntarily and intelligently elects to do so." *Faretta* v. *California,* 422 U.S. 806, 807, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); see also *State* v. *Gethers,* supra, citing *Lyles* v. *Estelle,* 658 F.2d 1015, 1020 (5th Cir. 1981); see generally annot., 98 A.L.R.3d 13 (1980). The court in *Faretta* stated the rule as follows: "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forego those relinquished benefits. *Johnson* v. *Zerbst,* 304 U.S. [458, 464–65, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)]. Cf. *Von Moltke* v. *Gillies,* 332 U.S. 708, 723–24, 68 S. Ct. 316, 92 L. Ed. 309 [1948] (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with

eyes open.' *Adams* v. *United States ex rel. McCann*, 317 U.S. [269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942)]." *Faretta* v. *California*, supra, 835.[7] In accordance with *Faretta*, we have recognized that "[n]othing more intricate than a voluntary and intelligent waiver of counsel is required of an accused to exercise his right to defend himself in person." *State* v. *Gethers*, supra, 533, citing *Faretta* v. *California*, supra, 835.

In reciting the circumstances of that case, the *Faretta* court noted that: "Here, weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel." *Faretta* v. *California*, supra, 835. Some courts have extrapolated from this language a further requirement that the defendant's request to proceed pro se must be clear and unequivocal;[8] *Raulerson* v.

---

[7] The watershed case on waiver of the right to counsel, *Johnson* v. *Zerbst*, 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938), established that any waiver must be "an intentional . . . abandonment of a known right or privilege"; id., 464; and must be "intelligent and competent." Id., 465. This formulation was consistently reaffirmed by the United States Supreme Court. *Faretta* v. *California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) ("the accused must 'knowingly and intelligently' forgo those relinquished benefits"); *Carnley* v. *Cochran*, 369 U.S. 506, 513, 82 S. Ct. 884, 8 L. Ed. 2d 70 (1962) (accused must "intelligently and understandingly waive the assistance of counsel"); *Von Moltke* v. *Gillies*, 332 U.S. 708, 727, 68 S. Ct. 316, 92 L. Ed. 309 (1948) (waiver must be entered "competently, intelligently, and with full understanding of the implications"); *Adams* v. *United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942) (accused may waive counsel "if he knows what he is doing and his choice is made with eyes open"); see *State* v. *Gethers*, 193 Conn. 526, 547–48, 480 A.2d 435 (1984) (*Healey, J.,* dissenting).

[8] The "clear and unequivocal request" formulation has been said to have developed primarily as a standard designed to minimize abuses by criminal defendants who might be inclined to manipulate the system. See generally comment, "The Right to Appear Pro Se: Developments in the Law," 59 Neb. L. Rev. 135, 141–43 (1980). "If an unequivocal request were not required, convicted criminals would be given a ready tool with which to upset adverse verdicts after trials at which they had been represented by counsel." (Citations omitted.) *United States ex rel. Maldonado* v. *Denno*, 348 F.2d 12, 16 (2d Cir. 1965), cert. denied sub nom. *DiBlasi* v. *McMann*, 384 U.S. 1007, 86 S. Ct. 1940, 16 L. Ed. 2d 1020 (1966); accord *Moreno*

*Wainwright,* 732 F.2d 803, 808 (11th Cir.), cert. denied, 469 U.S. 966, 105 S. Ct. 366, 83 L. Ed. 2d 302 (1984); *United States* v. *Tompkins,* 623 F.2d 824, 827–28 (2d Cir. 1980); *United States* v. *Bennett,* 539 F.2d 45, 50 (10th Cir.), cert. denied, 429 U.S. 925, 97 S. Ct. 327, 50 L. Ed. 2d 293 (1976); *State* v. *Crafts,* 425 A.2d 194, 196 (Me. 1981); and the defendant contends that the record establishes that this he did not do. Our review of the record in this case, as we demonstrate below, reveals that the defendant did make a valid waiver of his constitutional right to counsel.

The defendant argues, and we agree, that the gist of his initial dialogue with the trial court, "accurately construed," was a request to act as co-counsel along with his court-appointed attorney. The defendant's request for hybrid representation was denied by the trial court, and we agree that this type of request should not be considered as a request to proceed pro se. See *Raulerson* v. *Wainwright,* supra, 808; *United States* v. *Bennett,* supra, 49. We note that the defendant's court-appointed counsel expressed clearly her lack of willingness to serve as co-counsel with the defendant,[9] and

---

v. *Estelle,* 717 F.2d 171, 176 (5th Cir. 1983); *Flowers* v. *Fair,* 680 F.2d 261, 262 (1st Cir.), cert. denied, 459 U.S. 946, 103 S. Ct. 262, 74 L. Ed. 2d 204 (1982); *United States* v. *Tompkins,* 623 F.2d 824, 828 (2d Cir. 1980); *State* v. *Crafts,* 425 A.2d 194, 196 (Me. 1981). In light of this possibility, it has been held that the burden of proof rests on the defendant to establish that he did not validly waive his right to counsel. *Maynard* v. *Meachum,* 545 F.2d 273, 277–78 (1st Cir. 1976), citing *Moore* v. *Michigan,* 355 U.S. 155, 161, 78 S. Ct. 191, 2 L. Ed. 2d 167 (1957); see also *State* v. *Nash,* 149 Conn. 655, 662, 183 A.2d 275, cert. denied, 371 U.S. 868, 83 S. Ct. 130, 9 L. Ed. 2d 104 (1962), cited with approval in *State* v. *Gethers,* 193 Conn. 526, 533, 480 A.2d 435 (1984); but see *Commonwealth* v. *Palmer,* 315 Pa. Super. 601, 609, 462 A.2d 755 (1983). Trial courts, of course, are required to ensure compliance with Practice Book § 961 and should not allow a defendant to proceed pro se absent a valid waiver of his constitutional right to assistance of counsel.

[9] We are not unmindful that occasions may arise where a defense counsel may not be free to advise the court expressly why withdrawal is essential. For example, the defendant may inform his counsel that a defense

the record discloses that the defendant's wish to be permitted hybrid representation status was the catalyst for Hoberman's first motion to withdraw her appearance as his attorney.

The trial court, faced on the first scheduled day of trial with a defendant requesting a status to which he had no legal right; see Part II, infra; and a motion to withdraw from an attorney whom the defendant considered to be a "very good lawyer," scrupulously attempted to accommodate the defendant's desire to participate actively in conducting his defense within constitutional parameters.[10] Cf. *Moreno* v. *Estelle,* 717 F.2d 171 (5th Cir. 1983). The court, after ensuring that the requirements for a valid waiver had been satisfied; see *State* v. *Gethers,* supra, 532–40; see generally Practice Book § 961;[11] proposed that if the defendant wanted to proceed pro se, Hoberman would be

witness, or even the defendant himself, intends to commit perjury while testifying under oath. As an officer of the court the defense counsel then may inform the court, without violating his client's confidence, that he must withdraw. See Code of Professional Responsibility DR 2-110.

A "hybrid" representation situation "may present the attorney with a moral dilemma so serious that a conflict of interest arises; in this case permissive withdrawal is the only realistic solution available to the unhappy attorney." Chused, *"Faretta* and the Personal Defense: The Role of a Represented Defendant in Trial Tactics," 65 Cal. L. Rev. 636, 669 (1977).

[10] It has been suggested that, in cases in which such a difference of opinion arises between the defendant and his attorney, the trial court's duty of inquiry indeed might be required to include the notification of the defendant's *Faretta* right to proceed pro se. Chused, *"Faretta* and the Personal Defense: The Role of a Represented Defendant in Trial Tactics," 65 Cal. L. Rev. 636, 664 n.133, 667 n.145 (1977); see *Faretta* v. *California,* 422 U.S. 806, 852, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (Blackmun, J., dissenting).

[11] Practice Book § 961, which "was adopted in order to implement the right of a defendant in a criminal case to act as his own attorney in defending himself . . ."; *State* v. *Gethers,* 193 Conn. 526, 532, 480 A.2d 435 (1984); and which is entitled "Waiver," provides:

"A defendant shall be permitted to waive his right to counsel and shall be permitted to represent himself at any stage of the proceedings, either prior to or following the appointment of counsel. A waiver will be accepted

appointed as his standby counsel to be available "for consultation" and ready "to step in" when the defendant during the trial realized he was "out of [his] depth." The record establishes without question that the defendant affirmatively responded to this proposal, stated on the record that he understood it "perfectly well," and accepted it both orally and by filing a written pro se appearance form.

If the trial court has first made appropriate inquiries regarding the defendant's choice of representation, "the court can then properly insist that the defendant choose between representation by his existing counsel and proceeding pro se." *United States* v. *Welty*, 674 F.2d 185, 188 (3d Cir. 1982). "A criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive." *Maynard* v. *Meachum*, 545 F.2d 273, 278 (1st Cir. 1976). In the present case, the trial court heard statements from both the defendant and his counsel regarding their difference of opinion. The trial court then inquired of the defendant regarding the criteria for an effective waiver. See footnote 2, supra. "When a defendant is faced with the choice of proceed-

only after the judicial authority makes a thorough inquiry and is satisfied that the defendant:

"(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

"(2) Possesses the intelligence and capacity to appreciate the consequences of the decision to represent himself;

"(3) Comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case; and

"(4) Has been made aware of the dangers and disadvantages of self-representation."

The *Gethers* court stated that, although "a more formal inquiry involving specific consideration of each element of the rule is preferable," an "insubstantial" departure from the rule will not constitute a denial of a defendant's constitutional right "unless it [is] shown that his waiver of counsel was involuntary or uninformed." *State* v. *Gethers*, supra, 539–40.

ing with counsel he is not entirely happy with or defending pro se, the trial judge must satisfy himself that if the defendant chooses to proceed pro se, he does so knowingly, with a full understanding of the risks involved." *Cordoba* v. *Harris,* 473 F. Sup. 632, 637 (S.D.N.Y. 1979). This the trial court did do, and the defendant makes no claim that the trial court failed to comply with Practice Book § 961.

First, the trial court expressly advised the defendant of his right to be represented by counsel. Second, the trial court warned the defendant at length about the dangers of self-representation. Third, the defendant was apprised of the nature of the proceedings against him, and of the potential exposure to punishment. See footnote 2, supra; see also *State* v. *Gethers,* supra, 537 (the trial court "may appropriately presume that defense counsel has explained the nature of the offense in sufficient detail"); cf. *State* v. *Barker,* 35 Wash. App. 388, 393–94, 667 P.2d 108 (1983). Fourth, the defendant actively participated in the colloquies involved, which were both informative and lively. Fifth, the trial court had extensive opportunities to see, hear and evaluate the defendant's intelligence and perceptions. On this record[12] we conclude that the defendant did voluntarily and intelligently waive his constitutional right to counsel in choosing the option of proceeding pro se with standby counsel available to him; see *Flowers* v. *Fair,* 680 F.2d 261 (1st Cir.), cert. denied, 459 U.S. 946, 103 S. Ct. 262, 74 L. Ed. 2d 204 (1982); and the record establishes that " 'he [knew] what he [was] doing and his choice [was] made with eyes open.' " *Faretta* v. *California,* supra, 835, citing *Adams* v. *United States ex rel. McCann,* 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942).

---

[12] The record in this case demonstrates that the defendant made a valid and effective waiver of his constitutional right to counsel even more clearly than that in *State* v. *Gethers,* 193 Conn. 526, 480 A.2d 435 (1984), in which this court found a valid waiver.

## II

The defendant also claims that the trial court erred by denying him the right to hybrid representation that he contends is guaranteed by article first, § 8, of the constitution of the state of Connecticut. The key portion of that provision declares that "[i]n all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ." Conn. Const., art. I § 8.[13] In his brief the defendant argues that the plain language of the provision "suggests that the right the framers [of the Connecticut constitution] sought to protect was the right of a criminal accused to present his case as co-counsel *with* his retained or appointed attorney, should he so desire." (Emphasis in original.) The defendant also argues that "the standard tools of constitutional construction" demonstrate that "the provision must be interpreted so as to guarantee a right to hybrid representation." We disagree and hold today that article first, § 8, of the Connecticut constitution does not guarantee the right to hybrid representation.[14]

---

[13] Section 8 of article first of the constitution of the state of Connecticut provides in part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed."

[14] Although remarking that "the defendant never presented to the trial court his claim that he had a state constitutional right to hybrid representation," the state in its brief does not dispute that the defendant's claim is nevertheless reviewable on appeal because of its implications relating to the defendant's fundamental constitutional rights to assistance of counsel and to a fair trial. See *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

As a preliminary matter, it is necessary to define the term "hybrid representation," also known as "co-counsel" status. The defendant explains that "[u]nder such a 'hybrid representation' arrangement, both he and his attorney would conduct portions of his trial, while he retained ultimate control over defense strategy." Accord 2 LaFave & Israel, Criminal Procedure (1984) § 11.5 (f); comment, "The Right to Appear Pro Se: Developments in the Law," 59 Neb. L. Rev. 135, 156–57 (1980); note, "The Accused as Co-Counsel: The Case for the Hybrid Defense," 12 Val. U.L. Rev. 329, 339 (1978); see 21A Am. Jur. 2d, Criminal Law § 767 (1981). The state does not dispute that a hybrid representation arrangement involves "the joint presentation of his defense by him and by his counsel."[15] Theoretically, hybrid representation can be considered as the ultimate product of a criminal defendant's "partial waiver" of both his *Faretta* right to self-representation and his right to assistance of counsel. 2 LaFave & Israel, supra. The record indicates that, in the pertinent proceedings, the defendant's initial colloquy with the trial court could be fairly construed as a request for hybrid representation, although he never explicitly requested "co-counsel" or "hybrid" status.[16]

The defendant premises his hybrid representation claim on the state rather than the federal constitution.

[15] The hybrid representation model thus differs from self-representation with standby counsel serving the pro se defendant, principally in an advisory capacity, within the parameters of Practice Book § 964. See, e.g, *United States* v. *Gaines,* 416 F. Sup. 1047, 1050 (N.D. Ind. 1976); see generally Chused, "*Faretta* and the Personal Defense: The Role of a Represented Defendant in Trial Tactics," 65 Cal. L. Rev. 636, 660–61 (1977); comment, "The Right to Appear Pro Se: Developments in the Law," 59 Neb. L. Rev. 135, 154–56 (1980).

[16] The state does not dispute that the defendant in fact requested hybrid representation. Instead, the state specifically argues that "the ruling of the trial court denying the defendant's request to appear as co-counsel was one grounded upon its sound discretion, rather than upon our state consti-

It has been uniformly established that the right to counsel under the sixth amendment to the federal constitution does not guarantee a criminal defendant the right to hybrid representation.[17] The United States

tution." It should be noted, however, that Hoberman, informing the court of the defendant's "interest" in conducting "a portion of his own defense," did expressly use the term "co-counsel" in her oral statement of the defendant's position. See footnote 1, supra.

[17] The list of decisions rejecting the argument that a right to hybrid representation is compelled under the federal constitution is rather lengthy. Prior to the *Faretta* decision in 1975, the federal courts uniformly rejected the constitutional basis for hybrid representation status. See, e.g., *United States* v. *Conder,* 423 F.2d 904 (6th Cir.), cert. denied sub nom. *Pegram* v. *United States,* 400 U.S. 958, 91 S. Ct. 357, 27 L. Ed. 2d 267 (1970); *Brasier* v. *Jeary,* 256 F.2d 474 (8th Cir.), cert. denied, 358 U.S. 867, 79 S. Ct. 97, 3 L. Ed. 2d 99, reh. denied, 358 U.S. 923, 79 S. Ct. 286, 3 L. Ed. 2d 242 (1958); *United States* v. *Private Brands,* 250 F.2d 554 (2d Cir. 1957), cert. denied, 355 U.S. 957, 78 S. Ct. 542, 2 L. Ed. 2d 532 (1958). The federal courts, it must be remembered, have been able to rely, at least in part, on 28 U.S.C. § 1654, which provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel. . . . " That federal statute, however, withstood constitutional attack on the hybrid representation issue in at least one case. *Shelton* v. *United States,* 205 F.2d 806 (5th Cir.), cert. dismissed on petitioner's motion, 346 U.S. 892, 74 S. Ct. 230, 98 L. Ed. 395 (1953), motion to vacate denied, 349 U.S. 943, 75 S. Ct. 876, 99 L. Ed. 1269 (1955). Pre-*Faretta* state court decisions also expressed the belief that no federal constitutional right to hybrid representation existed. See, e.g., *People* v. *Mattson,* 51 Cal. 2d 777, 787–88 n.3, 336 P.2d 937 (1959). The one state court exception revealed by our research is *Wake* v. *Barker,* 514 S.W.2d 692, 696 (Ky. App. 1974) (hybrid status "is embraced within the right-to-counsel and equal-protection provisions of the federal and state constitutions"). See note, "The Accused as Co-Counsel: The Case for the Hybrid Defense," 12 Val. U.L. Rev. 329, 338 (1978); annot., 77 A.L.R.2d 1233 (1961), and later case service (1975).

The post-*Faretta* case law continues to reject the claim that the federal constitution guarantees a right to hybrid representation. See, e.g., *United States* v. *Kimmel,* 672 F.2d 720 (9th Cir. 1982); *United States* v. *Dunlap,* 577 F.2d 867 (4th Cir.), cert. denied, 439 U.S. 858, 99 S. Ct. 174, 58 L. Ed. 2d 166 (1978); *United States* v. *Hill,* 526 F.2d 1019 (10th Cir. 1975), cert. denied, 425 U.S. 940, 96 S. Ct. 1676, 48 L. Ed. 2d 182 (1976); *United States* v. *Wolfish,* 525 F.2d 457 (1975), cert. denied, 423 U.S. 1059, 96 S. Ct. 794, 46 L. Ed. 2d 649 (1976); *Hooks* v. *State,* 416 A.2d 189 (Del. 1980); *Commonwealth* v. *Palmer,* 315 Pa. Super. 601, 610, 462 A.2d 755 (1983); *Moore* v. *State,* 83 Wis. 2d 285, 265 N.W.2d 540, cert. denied, 439 U.S. 956, 99 S. Ct. 356, 58 L. Ed. 2d 348 (1978).

Supreme Court recently indicated that *"Faretta* does not require a trial judge to permit 'hybrid' representation of the type Wiggins was actually allowed."[18] *McKaskle* v. *Wiggins,* 465 U.S. 168, 183, 104 S. Ct. 944, 79 L. Ed. 2d 122, reh. denied, 465 U.S. 1112, 104 S. Ct. 1620, 80 L. Ed. 2d 148, on remand, 729 F.2d 1026 (5th Cir. 1984). Quite clearly, there is no federal constitutional right to hybrid representation. And it must be remembered that, "although we fully recognize the primary independent vitality of the provisions of our own constitution"; *Horton* v. *Meskill,* 172 Conn. 615, 641, 376 A.2d 359 (1977); "the decisions of the United States Supreme Court defining federal constitutional rights are, at the least, persuasive authority"; id.; and thus may be "afforded respectful consideration." Id., 642; see also *Cologne* v. *Westfarms Associates,* 192 Conn. 48, 66, 469 A.2d 1201 (1984).

The defendant essentially argues that the plain meaning of the pertinent clause of article first, § 8, compels the conclusion that the right to hybrid representation is one guaranteed by our state constitution. Again, the constitutional language, which is the focus of this claim on appeal, provides that "[i]n all criminal prosecutions, the accused shall have a right to be *heard* by himself *and* by counsel . . . ." (Emphasis added.) Conn. Const., art. I § 8. The defendant argues that the framers' use of the conjunctive "and" rather than the disjunctive "or" and the application of the phrase "to be heard" supports his position.

---

[18] In *McKaskle,* the defendant Wiggins objected to the unsolicited participation of his court-appointed standby counsel but had expressly agreed to his counsel's presentation of a statement to the jury. *McKaskle* v. *Wiggins,* 465 U.S. 168, 104 S. Ct. 944, 948, 79 L. Ed. 2d 122, reh. denied, 465 U.S. 1112, 104 S. Ct. 1620, 80 L. Ed. 2d 148, on remand, 729 F.2d 1026 (5th Cir. 1984). We note that the *McKaskle* court said: "A defendant does not have a constitutional right to choreograph special appearances by counsel." Id., 183.

"In dealing with constitutional provisions we must assume that infinite care was employed to couch in scrupulously fitting language a proposal aimed at establishing or changing the organic law of the state. *Cahill v. Leopold,* 141 Conn. 1, 19, 103 A.2d 818 [1954]; 1 Cooley, Constitutional Limitations (8th Ed.) p. 125. Unless there is some clear reason for not doing so, effect must be given to every part of and each word in the constitution." *Stolberg* v. *Caldwell,* 175 Conn. 586, 597–98, 402 A.2d 763 (1978), appeal dismissed sub. nom. *Stolberg* v. *Davidson,* 454 U.S. 958, 102 S. Ct. 496, 70 L. Ed. 2d 374 (1981). Although the simplicity of the defendant's argument may have some superficial appeal, important questions involving constitutional principles, as a general rule, "cannot be so easily solved." *Adams* v. *Rubinow,* 157 Conn. 150, 155, 251 A.2d 49 (1968). We find the defendant's "plain meaning" argument unpersuasive.

In his brief, the defendant maintains the plain language of article first, § 8, "clearly suggests that the right the framers sought to protect was the right of a criminal accused to present his case as co-counsel *with* his retained or appointed attorney, should he so desire." (Emphasis in original.) We have previously noted, however, that "[s]imilar provisions in other states have not been construed to entitle an accused as a matter of right to be heard by both himself and by counsel." *State* v. *Carr,* 172 Conn. 458, 475, 374 A.2d 1107 (1977). Constitutional framers' selection of the word "and" in comparable "right to be heard" provisions in other jurisdictions has been held *not* to encompass a state constitutional guarantee: to "a right to representation and self-representation simultaneously"; *Hooks* v. *State,* 416 A.2d 189, 199 (Del. 1980); to "simultaneous enjoyment" of "these two basic rights"; *State* v. *Burkhart,* 541 S.W.2d 365, 369 (Tenn. 1976); "to have his case presented in court by both himself and counsel acting at

the same time"; *People* v. *Sharp,* 7 Cal. 3d 448, 459, 499 P.2d 489, 103 Cal. Rptr. 233 (1972), citing *People* v. *Mattson,* 51 Cal. 2d 777, 336 P.2d 937 (1959); *State* v. *Burgin,* 539 S.W.2d 652, 654 (Mo. 1976), citing *State* v. *Velanti,* 331 S.W.2d 542, 546 (Mo. 1960); "to be represented by counsel and at the same time actively conduct his own defense"; *Moore* v. *People,* 171 Colo. 338, 346, 467 P.2d 50 (1970), citing *People* v. *Mattson,* supra; to "an absolute right of the defendant to actively participate, with his counsel, in the trial of his case"; *Moore* v. *State,* 83 Wis. 2d 285, 298, 265 N.W.2d 540, cert. denied, 439 U.S. 956, 99 S. Ct. 356, 58 L. Ed. 2d 348 (1978); or "may intermittently use and then discard counsel." *State* v. *Whitlow,* 13 Or. App. 607, 610, 510 P.2d 1354 (1973); accord *Mosby* v. *State,* 457 S.W.2d 836, 839–40 (Ark. 1970); *People* v. *Mirenda,* 57 N.Y.2d 261, 265–66 n., 442 N.E.2d 49, 455 N.Y.S.2d 752 (1982) (state constitutional provision allowing criminal defendant "to appear and defend in person and by counsel" refers to two separate rights that are not to be exercised "both at the same time"); cf. *Burney* v. *State,* 244 Ga. 33, 36, 257 S.E.2d 543, cert. denied, 444 U.S. 970, 100 S. Ct. 463, 62 L. Ed. 2d 385 (1979) (state constitution provides that "[n]o person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this state, in person, by attorney, or both"); *Gray* v. *Mississippi,* 351 So. 2d 1342, 1345 (Miss. 1977) (state constitution provides that "the accused shall have a right to be heard by himself or counsel, or both"); contra *Wake* v. *Barker,* 514 S.W.2d 692 (Ky. App. 1974). Thus, the weight of authority overwhelmingly demonstrates that the defendant's suggested construction of "and" in article first, § 8, is far from plain. See *State* v. *Carr,* supra.

In sum, we are not persuaded that the framers' use of the conjunctive in article first, § 8, manifests an intent to guarantee hybrid representation. " 'If the

words have a doubtful meaning, or are susceptible of two meanings, they should receive that which will effectuate the intent of the framers of the Constitution and the general intent of the instrument.' *Borino* v. *Lounsbury,* 86 Conn. 622, 625, 86 A. 597 (1913)." *Cologne* v. *Westfarms Associates,* supra, 62.

The *Borino* rule also assists in our analysis of the phrase, "right to be heard," in § 8 of article first. Historical background, where there is ambiguity, may be utilized as a proper tool to discern the framers' intent in drafting the language of constitutional provisions; see *Cologne* v. *Westfarms Associates,* supra; or of legislative enactments. See *Perille* v. *Raybestos-Manhattan-Europe, Inc.,* 196 Conn. 529, 494 A.2d 555 (1985). Constitutional interpretation can be "necessarily influenced" by recognition of a provision's historical roots, including its English common law antecedents. *Borino* v. *Lounsbury,* supra, 629; see *Faretta* v. *California,* supra, 821–22. Our examination of the historical background of article first, § 8, discloses that there are two related yet separate legal developments that may have culminated in the original adoption of this provision of the first Connecticut constitution in 1818.

First, the independent right of an individual accused of the commission of a crime to self-representation had evolved. See generally *Faretta* v. *California,* supra. "[U]nder the ancient English common law a person on trial for a felony was not allowed counsel and was not a competent witness in his own behalf." *State* v. *Carr,* supra, 473. In cases involving other crimes that were prosecuted in the Star Chamber, a defendant was compelled "to accept representation by counsel whose object was to avoid the disapprobation which would follow if anything in the defendant's answer to the indictment offended the Crown." *Hooks* v. *State,* supra, 199; see also *Faretta* v. *California,* supra, 821–23. During interrogation conducted in the Star Chamber, the

accused was not permitted assistance of counsel. Note, "Assistance of Counsel: A Right to Hybrid Representation," 57 B.U.L. Rev. 570, 577 (1977). After the elimination of the Star Chamber, "every litigant was required to 'appear before the court in his own person and conduct his own cause in his own words.' " (Footnote omitted.) *Faretta* v. *California,* supra, 823. The legal fiction had emerged that the presiding judge could serve in these undoubtedly inquisitorial proceedings as counsel for the accused. Id., 824 n.21; *State* v. *Carr,* supra, 473; *State* v. *Hoyt,* 47 Conn. 518, 543–44 (1880); note, 57 B.U.L. Rev., supra, 577. Incremental statutory reform commencing in late seventeenth century England provided criminal defendants with the option of presenting a defense " 'by Counsel learned in the Law.' " *Faretta* v. *California,* supra, 824; see also *State* v. *Burkhart,* supra, 367; note, 57 B.U.L. Rev., supra. The right to counsel thus emerged "as guaranteeing a choice between representation by counsel and the traditional practice of self-representation." *Faretta* v. *California,* supra, 825; see also *State* v. *Burkhart,* supra.

Historically, "[i]n the American Colonies the insistence upon a right of self-representation was, if anything, more fervent than in England." *Faretta* v. *California,* supra, 826. As a general proposition, the scope of the right to counsel in early colonial times was probably limited, just as it had been in England. See note, 57 B.U.L. Rev., supra, 578. Because lawyers in colonial America were identified with the Crown, distrust of lawyers was institutionalized as several colonies, including Connecticut, initially "prohibited pleading for hire in the 17th century." *Faretta* v. *California,* supra, 827 and n.32.[19] By the end of that

---

[19] In 1708, the General Assembly enacted a law which provided that "[n]o person, except in his own case, [should] be admitted to make any plea at the bar, without being first approved of by the court before whom the plea

century, however, the right to counsel had been established in Connecticut. Id., n.35; 2 Swift, A System of the Laws of the State of Connecticut (1796) pp. 398–99.[20] Appointment of counsel was "the practice in Connecticut in the latter part of the 18th century; appointment apparently was sometimes made even when the accused failed to request counsel, if he appeared in need of a lawyer, but there is no indication appointment was ever made over the objection of the accused." *Faretta* v. *California,* supra, 830 n.40, citing 2 Swift, supra, 392.

Thus, by the time of the adoption of our first state constitution in 1818, a defendant in a criminal case had the right to present a defense, including one by counsel, if he so chose. Under the rationale as espoused by the recent illustrative decision in *Hooks* v. *State,* supra, our constitutional provision guaranteeing "a right to be heard by himself and by counsel"[21] simply "was

is to be made." Farrell, The Superior Court Diary of William Samuel Johnson 1772–1773 (1942) p. liii. The 1708 act was repealed in 1730 when legislation was enacted that there should be a maximum of eleven attorneys in the Connecticut colony. Id.

[20] The court in *Faretta* v. *California,* 422 U.S. 806, 827 n.35, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), quoted the following passage from Zephaniah Swift's early legal treatise:

"We have never admitted that cruel and illiberal principle of the common law of England, that when a man is on trial for his life, he shall be refused counsel, and denied those means of defence, which are allowed, when the most trifling pittance of property is in question. The flimsy pretence, that the court are to be counsel for the prisoner will only heighten our indignation at the practice: for it is apparent to the least consideration, that a court can never furnish a person accused of a crime with the advice, and assistance necessary to make his defence. . . .

"Our ancestors, when they first enacted their laws respecting crimes, influenced by the illiberal principles which they had imbibed in their native country, denied counsel to prisoners to plead for them to any thing but points of law. It is manifest that there is as much necessity for counsel to investigate matters of fact, as points of law, if truth is to be discovered."

2 Swift, A System of the Laws of the State of Connecticut (1796) pp. 398–99.

[21] The Delaware constitution, article first, § 7, provides in pertinent part: "In all criminal prosecutions, the accused has a right to be heard by himself and his counsel."

addressed to securing both of these equally important fundamental rights. But we are not persuaded that a hybrid representation arrangement would be in any way consistent with or of assistance to the framers' original intent. The discussion in *Faretta* clearly shows that the states envisioned the right to counsel as an adjunct to the ever-present right to self-representation, available if the defendant wishes to make use of it." Id., 199; see *Betts* v. *Brady,* 316 U.S. 455, 466, 62 S. Ct. 1252, 86 L. Ed. 1595 (1942).

The second development in the law involved the competency of a criminal defendant to testify on his own behalf at trial. The ancient common law rule was "that a person charged with a criminal offense is incompetent to testify under oath in his own behalf at his trial." *Ferguson* v. *Georgia,* 365 U.S. 570, 81 S. Ct. 756, 5 L. Ed. 2d 783 (1961). In our examination of the English common law system, we have already indicated that after the English revolution the defendant was permitted to *argue* on his own behalf at trial. *Faretta* v. *California,* supra, 823–24. "In the process the defendant could offer by way of explanation material that would later be characterized as testimony. . . . In the seventeenth century, however, he was allowed to call witnesses in his behalf; the right to have them sworn was accorded by statute for treason in 1695 and for all felony in 1701. 7 Will. III, c. 3; 1 Anne, St. 2, c. 9. . . . A distinction was drawn between the accused and his witnesses—they gave evidence but he did not. . . . The general acceptance of the interest rationale as a basis for disqualification reinforced this distinction, since the criminal defendant was, of course, *par excellence* an interested witness." (Emphasis in original.) *Ferguson* v. *Georgia,* supra, 574.

This rule was the law in Connecticut when the state constitution was adopted: "It is a general rule in criminal cases, that a person who is either to be a gainer,

or loser in the event of the cause, in which he is called to give evidence, is incompetent, and cannot be examined." Swift, A Digest of the Law of Evidence in Civil and Criminal Cases (1810) p. 69; see generally *Lucas* v. *State,* 23 Conn. 18 (1854). However, the defendant, as explained above, had the right to make his oral statement, unsworn, in his case. In 1867, the common law disability prohibiting a defendant from testifying under oath was abrogated by statute in Connecticut.[22] See General Statutes § 54-84.

By 1818, then, one accused of a crime in our state had no right to *testify* in his own behalf. He could, however, be "heard" in his role as defendant by making an unsworn statement himself. The provision in article first, § 8, that guarantees the accused "a right to be heard by himself and by counsel" may have been intended by the framers "to insure that every accused citizen enjoyed the benefit of counsel *and* a correlative right to be heard in person." (Emphasis in original.) *State* v. *Burkhart,* supra, 371.[23] Under the rationale espoused by such cases as *Burkhart* and *Landers* v. *State,* 550 S.W.2d 272 (Tex. Crim. App. 1977), article first, § 8, was "intended to afford an accused the right to participate and be heard in his trial while at the same time removing the restrictions to full representation and participation of counsel." *Landers* v. *State,* supra, 277; see also *State* v. *Burkhart,* supra. The short

---

[22] The sentiment in Connecticut was apparently in agreement with Jeremy Bentham's earlier reform movement in England, which espoused "contending always for rules that would not exclude but would let in the truth"; *Ferguson* v. *Georgia,* 365 U.S. 570, 575, 81 S. Ct. 756, 5 L. Ed. 2d 783 (1961); Connecticut was one of the earliest states to pass a general witness competency statute, doing so in 1867. See generally *State* v. *Buxton,* 79 Conn. 477, 478–79, 65 A. 957 (1907).

[23] The Tennessee constitution, article first, § 9, provides in pertinent part: "That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel. . . ." "The right of a defendant to participate in his own defense is an alternative one." *State* v. *Melson,* 638 S.W.2d 342, 359 (Tenn. 1982).

answer to the critics of this line of reasoning that it causes the phrase, "to be heard," "to have different meanings as to the terms himself, or counsel or both"; *Landers* v. *State,* supra, 281 (Phillips, J., dissenting); is that this theory assumes the framers' intent that each would be "heard" in accordance with his respective accepted role as defined at that time in history. The defendant could at that time appear as an unsworn witness represented by counsel. If the accused, however, chose to represent himself, then he would be "heard" in the capacity of counsel as well as in that of defendant. After the disqualification of a defendant as a witness was removed by statute his right to make an unsworn statement was replaced by the right to testify. See *Landers* v. *State,* supra.

In any event, we need not base our resolution of this issue on an express selection between these two historical developments. In light of all this background, we instead are persuaded that to accept the defendant's argument that article first, § 8, guarantees a right to hybrid representation would be tantamount to viewing that provision's language "as newly descended from the firmament like fresh fallen snow"; *Cologne* v. *Westfarms Associates,* supra, 62; as there is scant evidence that the framers ever intended, much less imagined, any such result.[24] That provision has not previously been so construed by this court. See *State* v. *Carr,*

[24] The defendant also asserts the argument that, because our state constitution was modeled on the Mississippi constitution, we should accept as a "compelling rationale" that state's recognition of the constitutional right to hybrid representation. See *Gray* v. *State,* 351 So. 2d 1342 (Miss. 1977). The language contained in article first, § 10, of the original Mississippi constitution of 1817, guaranteeing the right of an accused to "be heard by himself and counsel" was revised during the Mississippi constitutional convention of 1832 to provide that "[i]n all criminal prosecutions the accused shall have a right to be heard by himself or counsel, *or both.* . . . " (Emphasis added.) Mississippi Constitution, art. 3 § 26. The defendant without citation of authority states in his brief that this revision was "plainly a clarification and reaffirmation of the scope of the right intended to be guaranteed." Although the *Gray* court did hold the trial court's denial of

supra, 475. In conclusion, we decline the defendant's invitation to so construe this provision of our state constitution.[25]

the defendant's request to make a statement to the jury during argument at the guilt phase of his capital murder trial violated article third, § 26, the court's opinion on this issue is only one paragraph in length and does not mention in any fashion the purported interpretation of the revision as asserted by the defendant. *Gray* v. *State,* supra, 1345.

Although the defendant also relies on the writings of Zephaniah Swift to support his claim and to counter the state's arguments, our review of those sources, other than as noted previously in this opinion, shows them to be inconclusive. See, e.g., 2 Swift, Digest (1823) p. 396 ("Formerly, in this State, the same principle was adopted, that counsel should be admitted only to questions of law: but for some time past, prisoners have been admitted to a full defence by counsel in criminal cases: and this important privilege is guaranteed to them by the constitution, which provides that, in all criminal cases, the accused shall have a right to be heard by himself, and by counsel. . . .") See also 2 Dutton, A Revision of Swift's Digest (1853) p. 421 (to the same effect).

[25] The defendant does not claim that the trial court abused its discretion in denying his request for a hybrid representation arrangement.

It appears to be settled after *Faretta* that concerns involving judicial administration may not frustrate a defendant's choice to proceed pro se or with counsel. See *Faretta* v. *California,* 422 U.S. 806, 834 n.46, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); 2 LaFave & Israel, Criminal Procedure (1984) § 11.5, p. 52. Nevertheless, sound policy reasons have been offered for not establishing an absolute right to hybrid representation. As one post-*Faretta* court succinctly stated: "This rule recognizes that the conflicting interests of the accused and society involved in a criminal trial can be served only in an orderly proceeding. The trial judge must therefore have discretion to control the conduct of a trial to maintain dignity, decorum and orderly procedures; to avoid unnecessary delays; and to prevent the disruption of the judicial process by the accused's inept or disorderly self-representation. This approach reflects the fact that no right is more important to the accused and to society than the right to a fair, orderly trial." *Moore* v. *State,* 83 Wis. 2d 285, 300, 265 N.W.2d 540, cert. denied, 439 U.S. 956, 99 S. Ct. 356, 58 L. Ed. 2d 348 (1978); accord *Mosby* v. *State,* 457 S.W.2d 836, 840 (Ark. 1970); *People* v. *Mattson,* 51 Cal. 2d 777, 792, 336 P.2d 937 (1959); *People* v. *Mirenda,* 57 N.Y.2d 261, 266, 442 N.E.2d 49, 455 N.Y.S.2d 752 (1982); *State* v. *Burkhart,* 541 S.W.2d 365, 371 (Tenn. 1976); contra Chused, "*Faretta* and the Personal Defense: The Role of a Represented Defendant in Trial Tactics," 65 Col. L. Rev. 636, 652–56 (1977). For a thoughtful exposition on the problems that defense counsel might experience with hybrid representation, see *People* v. *Mattson,* supra, 793. Accord *Landers* v. *State,* 550 S.W.2d 272, 280 (Tex. Crim. App. 1977); see generally note, "The Accused as Co-Counsel: The Case for the Hybrid Defense," 12 Val. U.L. Rev. 329, 341–52 (1978).

## III

The defendant also claims that the trial court committed reversible error by granting defense counsel Hoberman's motion to withdraw in that the court did not first establish "good cause"; see Practice Book § 632; and by restricting the role of his standby counsel so as to violate Practice Book § 964. The state counters that these claims, raised for the first time on appeal, have not been properly preserved for appellate review. In neither his brief nor his reply brief does the defendant address the state's argument that these claims have not been preserved for our review.

Our rules of practice, of course, require that a party, in order to preserve a claim for appeal, "distinctly [raise]" it at trial. Practice Book § 3063; see also Practice Book § 315; *State* v. *Evans,* 165 Conn. 61, 65–66, 327 A.2d 576 (1973). As we stated in *Evans,* supra, 70, and have reiterated since, it is only in "exceptional circumstances" "that newly raised claims can and will be considered by this court." The first such circumstance involving a recently discovered constitutional right is inapposite to these claims. Nor is the second exceptional circumstance, the deprivation "of a fundamental constitutional right and a fair trial," implicated here. Id. We do note, however, that the record, fairly read, supports the state's position that the defendant received a fundamentally fair trial,[26] and the defendant asserts no claim to the contrary.

There is no error.

In this opinion the other judges concurred.

[26] In regard to the claim involving Practice Book § 632, the record plainly reveals that the trial court granted the defendant's appointed counsel's motion to withdraw only *after* the defendant exercised his option to enter a pro se appearance, a situation that is closely analogous to a discharge of counsel. See Code of Professional Responsibility DR 2-110 (B) (4). As to the § 964 claim, the defendant or his standby counsel could have raised this argument to the court at trial. This they did not do.